THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEVEN V. BRAJCKI, Defendant-Appellant.

Second District   No. 2—85—0812

Opinion filed November 20, 1986.—Rehearing denied January 8, 1987.

508

Bruce K. David, P.C., of Elgin, and Phyllis J. Perko, of Harlovic & Perko, of West Dundee, for appellant.

Robert Morrow, State's Attorney, of Geneva (Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor's Office, of Springfield, and William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of Elgin, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

The defendant, Steven V. Brajcki, appeals from his conviction for the offense of reckless homicide. The cause was tried without a jury and resulted in a finding of guilty. A sentence of 18 months' imprisonment was imposed. The facts are not in dispute.

On March 23, 1985, at approximately 2:30 to 3 p.m., defendant was driving his gray Camaro in a northerly direction on Binnie Road. He had a passenger, Greg Hodson, seated on the passenger side in the front of the car. At the same time, Robert Wielgoszinski was proceeding westbound on Huntley Road. At the point where Binnie Road runs into Huntley Road, Binnie Road ends. A driver must then turn either east or west on Huntley Road. At the intersection of these two roads, a stop sign is posted for traffic on Binnie Road. Wielgoszinski testified it had rained earlier in the day, the road was damp, and it remained overcast. His wife and daughter were also in the car. Wielgoszinski stated that the speed limit was 55 miles per hour on Huntley Road, and that just prior to the collision, he believed he was traveling about 45 miles per hour. As he entered the intersection of Binnie and Huntley Roads, Wielgoszinski testified that he suddenly saw the defendant's car directly in front of him. He stated it came from somewhere on his left but he never saw the car until it was in front of him. Wielgoszinski related that he collided with defendant's car almost immediately. He said he heard no brakes squealing, nor did he have any other warning of the defendant's approach. The front of his car struck the right front of defendant's auto. Mr. Wielgoszinski stated that there were no problems with visibility on Huntley Road, that he could see approximately a half mile ahead.

There was testimony indicating the Wielgoszinski's car came to rest about 20 to 30 feet from the north edge of Huntley Road, in a line with Binnie Road if extended northerly, and the defendant's car was nearly 60 to 75 feet from the north edge of Huntley Road beyond Wielgoszinski's car. There was testimony indicating that defendant's passenger, Hodson, was thrown from the vehicle upon impact. Another paramedic, Gary Neuw, testified to the fact that Hodson's body lay 30 feet north of where defendant's car came to rest. Hodson died several hours later as a result of the injuries he sustained in the accident.

Lon Swanson witnessed the accident from approximately 50 feet away, while in his car. He testified that he saw a car going north, nearing the stop sign on Binnie Road. The car was 30 to 40 feet from the stop sign on Binnie Road when Swanson first saw it. Swanson noted the car was going too fast to stop at the stop sign. As the

defendant's car passed the stop sign, Swanson did not hear the car brake or honk its horn, or observe the car swerve to avoid the collision. Swanson testified the car "flew through the stop sign" and it was just "a blur" as it passed the stop sign.

From his post-accident analysis, State Trooper Roger Schmidt identified 66 feet of skid marks both before and after the stop sign on Binnie Road. He stated that the speed limit, posted on Binnie Road in both directions, is 40 miles per hour. It was Schmidt's opinion that anyone observing the speed limit on Binnie Road as they approach Huntley Road would have no difficulty stopping at the stop sign without going through the intersection. Another State trooper, Eric Norwood, determined that the brakes on defendant's car were in good working order.

One other person, Richard Maskell, observed defendant's car just prior to the accident. Maskell's testimony indicated that his house is a few hundred yards southwest of the intersection of Binnie and Huntley roads. The house is on a small hill overlooking Binnie and Huntley roads. He established a familiarity with the workings and speeds of automobiles as he used to be a competitive sports-car driver. He said he competed for two to three years. Just prior to the accident, Maskell was standing, looking out his front picture window. He first heard the sound of an engine roaring and the chassis noise from a car's suspension working at high speed over rough road. Maskell stated that such noise indicated a car traveling very fast. He further stated that within seconds after hearing the noise, he saw a gray Camaro headed eastbound "at a very high rate of speed. Of course it just flashed past the house." Based upon his experience, Maskell postulated that "it was being driven at the absolute limit you could keep it on the road. It was just hopping from bump to bump on that surface." Maskell estimated the car was traveling 50 to 70 miles per hour. Maskell testified that he drove Binnie Road northbound to Huntley Road virtually every day on the way to work for the four years he had lived there. On cross-examination, in response to a question regarding the number of accidents at that intersection, Maskell replied, "[a]s a matter of fact, I don't recall another accident at that intersection that I'm personally aware of in the four years we've been there."

As mentioned, the trial court found the defendant guilty of the offense of reckless homicide. The defendant raised four issues on appeal: (1) did the trial court err in its denial of defendant's motion for substitution of judges; (2) was the defendant proved guilty beyond a reasonable doubt of reckless homicide; (3) was improper evidence ad-

mitted sufficient to deprive defendant of his right to a fair trial; and (4) did the trial court fail to consider mandatory evidence while improperly considering other factors at the sentencing hearing so as to entitle defendant to a new hearing.

■■ Defendant first contends that his motion for substitution of judges was improperly denied. Defendant appeared before Judge McCarthy for arraignment on May 8, 1985. Defense counsel's associate was present. The matter was continued until May 22, 1985. At that hearing, the defendant filed his motion for substitution of judges. The written arraignment order entered that day by Judge McCarthy read: "This cause is assigned to Judge McCarthy for further proceedings herein." In addition, the following exchange took place between the judge and the defendant's counsel:

"THE COURT: Well, we're going to give the defendant time to file motion for discovery. We'll continue this matter for two weeks to Wednesday, May 22, at 9:00, Counsel. On or before that date the defendant will file his discovery motion herein and respond to the State's dscovery [sic] motion. And convey my admonition to Mr. David [defendant's counsel].

DEFENSE COUNSEL: I will Judge. At 9:00 on the 22nd. Correct?

THE COURT: Yes.

DEFENSE COUNSEL: This courtroom?

THE COURT: Yes."

The State correctly points out that both written and oral pronouncements will be read together in considering the court's ruling. (See *People v. Tackett* (1985), 130 Ill. App. 3d 347, 348.) It is the duty of counsel to remain apprised of the progress of their case, including any orders contained in the court file (see, *e.g., People v. Saunders* (1985), 135 Ill. App. 3d 594), and here, verbal indications by the judge of progress of the case.

The applicable statute requires "[w]ithin 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge." (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(a).) It is clear then that the motion was not timely filed as more than 10 days went by after the first hearing on May 8.

■■ ■ The defendant's second contention is that the elements of the offense of reckless homicide were not proved beyond a reasonable doubt. The killing of another, absent lawful justification, constitutes involuntary manslaughter if the act, whether lawful or unlawful, is such as is likely to cause death or great bodily harm and it is per-

formed recklessly. (*People v. Griffith* (1978), 56 Ill. App. 3d 747, 750.) If such death is attributable to the improper operation of a motor vehicle, a person may be charged with reckless homicide. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).) The essence of this offense is recklessness, and under the applicable statutory provision, it is defined thusly:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation ***." (Ill. Rev. Stat. 1985, ch. 38, par. 4—6.)

(See also *People -v. Parra* (1975), 35 Ill. App. 3d 240.) To prove the offense of reckless homicide, there must be evidence that the defendant knew of the danger of collision and recklessly collided with the decedent without employing the reasonable means at his disposal to avoid the accident. *People v. Crego* (1946), 395 Ill. 451, 461-62; *People v. Frary* (1976), 36 Ill. App. 3d 111, 114.

■ The defendant claims that the State has shown only that he was speeding prior to the accident. He correctly points out that speeding alone is insufficient to demonstrate recklessness in the absence of aggravating factors. (*People v. Potter* (1955), 5 Ill. 2d 365, 371; *People v. Luttmer* (1977), 48 Ill. App. 3d 303, 305.) All of the cases cited by defendant in support of this proposition involve some type of contributory misconduct on the part of the person injured by defendant's conduct. Such is not the case here. The State has shown the defendant has failed to exercise any care by driving at an excessive rate of speed and failing to observe a stop sign at an intersection he had previously traversed.

The State produced testimony from three different witnesses that visibility was not a problem the day of the accident. The evidence at trial showed the roads were reasonably dry, but such a factor, even if the roads were wet, only relates to the defendant's failure to slow his speed in due regard for the increased hazard presented by slippery roadways. Also, from four different witnesses, evidence was adduced showing that defendant was driving too fast to stop at a clearly visible stop sign, on a road where the speed limit was posted. Richard Maskell and State Trooper Schmidt both indicated that anyone driving within the speed limit on Binnie Road approaching Huntley Road would have no difficulty stopping at the stop sign on Binnie Road without going through the intersection. Finally, decedent's widow testified to the defendant's prior knowledge of the nature of the inter-

section of Binnie and Huntley roads by virtue of her having ridden with defendant through this intersection some months prior to the accident.

We find no merit in defendant's claim of possible brake failure, which was refuted by the testimony of State Trooper Norwood, or in the contention that it was Wielgoszinski who failed to keep a proper lookout. The evidence showed that from Huntley Road, Wielgoszinski's view of approaching traffic on Binnie Road was very limited owing to the sharp incline of Binnie Road before it joins Huntley Road, the presence of vegetation, and a small hill running along the east side of Binnie Road leading nearly all the way up to the stop sign. Given the testimony as to the defendant's excessive speed, it is reasonable to assume Wielgoszinski did maintain a proper lookout. This court will not set aside a verdict unless the evidence is so improbable or palpably contrary to the verdict as to create a reasonable doubt of guilt. *People v. Yarbrough* (1977), 67 Ill. 2d 222, 227; *People v. Hawn* (1981), 99 Ill. App. 3d 334, 338.

■ The defendant next contends that he was deprived of a fair trial by introduction of improper evidence by the State and erroneous evidentiary rulings by the court. The defendant first raises objections to the statement of the decedent's wife regarding her conversation with her husband in the hospital:

"First thing he said to me is I promise no more drinkin'. He asked me how Steve was and he asked me who had the kids and he told me he loved me and he started complaining of difficulty breathing after that."

The general rule in murder cases regarding statements that the deceased has left a wife and children is that such statements are highly prejudicial and can constitute reversible error. (*People v. Free* (1983), 94 Ill. 2d 378, 425-26, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200, *rehearing denied* (1983), 464 U.S. 1004, 78 L. Ed. 2d 701, 104 S. Ct. 514.) However, here the case was tried before a judge, not a jury. An objection to the statement was duly made. It is presumed that the court in a bench trial relies on proper evidence in reaching a determination on the merits. (*People v. Berland* (1978), 74 Ill. 2d 286, 310, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64.) In addition, we note that the first portion of this statement is not unduly prejudicial both because the trial judge disavowed any reliance upon evidence of intoxication in reaching his decision and because the State produced other, admissible evidence regarding intoxication. The remainder of this statement was not presented in such a manner as to cause the trial court to believe that the existence of

decedent's dependents was a material fact as to the guilt of the defendant.

The defendant also claims that the introduction of evidence of injuries to those involved in the accident constitutes reversible error. The cases cited by the defendant for this proposition all deal with particularly graphic and shocking details of injury apparently designed to elicit a visceral response from a jury. Again, this case is being tried by a judge, and here the testimony relating to injury was not of a sort to elicit serious prejudice, the only testimony being very general as to type and severity of injury. Further, after the initial allowance of limited testimony as to injury, argued by the State to be evidence of the force of the impact, the judge allowed no further testimony on that issue in clear recognition of its possible prejudicial effect and irrelevancy.

The defendant attacks the admissibility of the opinion testimony of Richard Maskell, a witness to the defendant's driving just prior to the accident. The most significant portion of Maskell's testimony is his estimate of the speed of the car at 50 to 70 miles per hour, which served to corroborate that which was witnessed by Wielgoszinski at the scene of the accident. Maskell's statement that the car was being driven at the absolute limit of control was not objected to and is therefore waived for the purpose of appeal. (See, *e.g.,* *People v. Rink* (1983), 97 Ill. 2d 533, 542; *People v. Ishmael* (1984), 126 Ill. App. 3d 320, 329.) In addition, it is within the trial court's discretion to determine the qualification of a witness as an expert. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 960, 961; *People v. Lamprey* (1979), 79 Ill. App. 3d 1065, 1070.) We do not find an abuse of such discretion given the evidence as to Maskell's extensive firsthand knowledge of automotive mechanics, handling, and speed. Also, his knowledge of the conditions faced by the defendant on this road was well established. The defendant had the opportunity on cross-examination to challenge the credibility of this witness. Any error, then, affects not the admissibility of the evidence, but only the weight given it.

The last of defendant's evidentiary objections is the admission and consideration of the results of the blood test indicating defendant's level of intoxication. The State argues that defendant's failure to include this issue in his post-trial motion serves to waive the issue on appeal. (See Ill. Rev. Stat. 1983, ch. 38, par. 116—1.) The general rule in Illinois is that the defendant's failure to include an issue in his post-trial motion constitutes a waiver of that issue as a ground for reversal by the reviewing court. (*People v. Pickett* (1973),

54 Ill. 2d 280, 282.) However, Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)) allows this court to examine an issue subject to the waiver rule where there has been "plain error." We do not find plain error, for the judge here expressly stated that he had not relied upon any evidence of intoxication in reaching his verdict. The presumption already exists that the court in a bench trial considers only material, competent evidence in reaching a verdict. (*People v. Berland* (1978), 74 Ill. 2d 286, 310, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64.) We find it significant that the court specifically disclaimed reliance on any evidence of alcoholic intoxication.

■■ ■ The defendant's final claim of error rests upon the trial court's alleged failure to consider the defendant's personal circumstances, the alleged reliance upon defendant's previous involvement with alcohol, and the purported improper weight granted defendant's prior speeding convictions in its sentencing decision. Sentencing is a matter entrusted to the discretion of the trial court and will not be disturbed absent an abuse of that discretion. (*People v. Gustafson* (1979), 75 Ill. App. 3d 497, 502.) The trial court here found that probation would deprecate the seriousness of the defendant's conduct and be inconsistent with the ends of justice. Such a ruling is a proper one if there is support in the record. (*People v. Cox* (1980), 82 Ill. 2d 268, 281; *People v. Gittings* (1985), 136 Ill. App. 3d 655, 662-63.) The trial court need not set forth every reason or the weight given each factor considered in the sentencing decision. (*People v. Platinga* (1985), 132 Ill. App. 3d 512, 522-23; *People v. Davis* (1984), 124 Ill. App. 3d 813, 823.) Though the court must consider the defendant's rehabilitative potential in sentencing him, such consideration need not outweigh the seriousness of the offense or other aggravating factors. (*People v. Nelson* (1985), 130 Ill. App. 3d 304, 310; *People v. Campbell* (1984), 126 Ill. App. 3d 1028, 1058, *cert. denied* (1985), 471 U.S. 1136, 86 L. Ed. 2d 695, 105 S. Ct. 2677.) In fact, where, as here, the trial judge sets forth those factors seen as aggravating, it is assumed the trial court properly considered any mitigating factors. *People v. Baker* (1983), 114 Ill. App. 3d 803, 811.

■■ Therefore, the trial court's reliance upon the seriousness of the present offense and three previous speeding convictions, independent of any possible consideration of the defendant's past failure to take a breathalyzer test, were proper and sufficient aggravating conditions, as a whole, when considered in conjunction with the defendant's rehabilitative potential. The inclination to commit crimes and defendant's general character, considered along with the nature of a crime, protection of the public, and the promotion of deterrence

of such future acts, are all proper considerations for the trial court. (*People v. Jones* (1985), 132 Ill. App. 3d 764, 768; see also *People v. Knight* (1985), 139 Ill. App. 3d 188, 193.) We find no abuse of discretion in the sentencing determination by the trial court.

Accordingly, the decision of the circuit court of Kane County is hereby affirmed.

Affirmed.

NASH, P.J., and REINHARD, J., concur.