SECOND DIVISION

June 26, 2001

No. 1-98-4342

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

JIMMIE TYE,

Defendant-Appellant.

)))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Michael B. Bolan,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Following a bench trial, defendant Jimmie Tye was found guilty of first degree murder and was sentenced to death.  Defendant's conviction and sentence were upheld by the Illinois Supreme Court in 
People v. Tye
, 141 Ill. 2d 1, 565 N.E.2d 931 (1990).  Defendant subsequently filed a petition for postconviction relief claiming that he had received ineffective assistance of counsel at both the guilt-innocence and sentencing portions of his trial.  The circuit court
(footnote: 1) granted the State's motion to dismiss defendant's amended petition for postconviction relief with regard to the guilt-innocence phase without an evidentiary hearing but granted defendant a hearing on his claim of ineffective assistance of counsel at the sentencing phase of his trial.  Following a hearing, the court determined that defendant was entitled to a new sentencing hearing.  A new sentencing hearing was held, and, although defendant was again found eligible for the death penalty, he was sentenced to natural life in prison without the possibility of parole.  Defendant now appeals, contending the circuit court erred in dismissing his claim of ineffective assistance of counsel during the guilt-innocence portion of his trial without holding an evidentiary hearing and erred in sentencing him to natural life in prison.  In addition, at the request of defendant, the parties have filed supplemental briefs regarding the applicability of 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), to this case.

Defendant was charged with the murder of his three-year-old daughter Jasmin.  He retained a private attorney and a bench trial was eventually held.  The following is a summary of the relevant evidence.  The details of the crime and events surrounding it are set forth in greater detail in the Illinois Supreme Court's decision on direct appeal.  
Tye
, 141 Ill. 2d at 7-13.

On October 24, 1984, defendant was looking after his daughter, Jasmin, while her mother Pamela was at the hairdresser.  When Jasmin refused to go to bed after defendant instructed her to do so, defendant struck her several times with a belt.  Jasmin continued to refuse to go to bed and defendant continued to strike her with the belt.  Defendant then began to strike Jasmin with a 14-foot extension cord.  Defendant instructed Jasmin to put her pajamas on.  When she began to put her pajamas on the wrong way, defendant began to beat her with the extension cord again.  Defendant then held Jasmin up by one arm while continuing to beat her.  According to a statement defendant gave to police, he beat Jasmin over the course of an hour on her arms, legs, back, stomach, chest, shoulders, and face.

According to defendant, he then helped Jasmin put on her pajamas and go to bed.  Jasmin complained that her head hurt and defendant got her a damp towel.  Later, Jasmin began to vomit.  According to defendant, he blew into Jasmin's mouth and nose at one point in an attempt to clear them of vomit.

By the time Pamela returned home, Jasmin was no longer moving.  Because the apartment had no telephone, defendant and Pamela left to summon help.  Pamela's father came over and found that Jasmin's body was cold and had no pulse.  He left and flagged down a police officer.  Jasmin was transported to the hospital but was pronounced dead on arrival.

According to an investigating detective, both defendant and Pamela initially told the police that it was Pamela who had whipped Jasmin on October 24.  Later, defendant gave a formal, court-reported statement confessing to beating Jasmin.  That statement was admitted into evidence at trial.  Detectives searched defendant's apartment and found a belt and extension cord but no evidence of blood or vomit or a towel similar to the one defendant claimed to have placed on Jasmin's head.

The chief medical examiner of Cook County testified that his external examination of Jasmin's body revealed contusions too numerous to count over virtually every part of her body.  The injuries were consistent with blows inflicted by a belt, belt buckle, or electrical cord.  An internal examination of the victim's body revealed severe hemorrhaging to the underlying fat and muscle.  An X ray revealed a recent fracture of Jasmin's upper arm consistent with an upward pulling of that arm.  The examiner also testified that he found partially digested food in Jasmin's stomach and no evidence of vomit in her mouth or nostrils.

Defendant testified at trial and admitted to whipping Jasmin on October 24, 1984.  Defendant denied, however, that he had possessed any of the mental states necessary to sustain a charge of murder.  According to defendant, he had whipped Jasmin because he was "mad at her because she had been disobedient."

After hearing all of the evidence, the trial court found defendant guilty of murder.  The State requested a capital sentencing hearing and defendant, as he had at trial, waived his right to a jury for purposes of the hearing.  The trial court found defendant eligible for the death penalty because the victim was under the age of 12 and the death resulted from exceptionally brutal and heinous behavior indicative of wanton cruelty.  See Ill. Rev. Stat. 1983, ch. 38, par. 9-1(b)(7).  Despite presenting a number of mitigation witnesses at the sentencing hearing, defendant was sentenced to death.  In finding that there were insufficient mitigating factors to preclude the imposition of the death penalty, the trial court held:

"The Court's already made a finding that your behavior, Mr. Tye, on the date in question was exceptionally brutal and heinous and indicative of wanton cruelty.  I heard testimony in this courtroom about what you did.  I also saw the photographs about what you did.  What you did is you savagely brutalized three, four year old child.  Defenseless child, innocent child.  All she did to you was refused to go to bed, if I were to believe that portion of your testimony.  You inflicted hundreds of wounds upon her body.  You broke her arm.  You dislocated her shoulder to such a degree that her little body went into shock.  That's a mechanism the body has to shut off the pain and that's what caused her death.  And I have to consider what you did and contrast what you did with any mitigation that's presented here today in your behalf and determine whether or not that mitigation is sufficient to preclude the imposition of the death penalty.

In evaluating your acts I, as a jury, *** have a right to draw upon my experiences in life to determine how serious your crime was.  And I'll state for the record that for a period of seven years I was a homicide detective in the City of Chicago; and I investigated numerous child beatings.  I investigated numerous child deaths.  And I spent a total 25 years in the criminal justice system.  And I have never seen a child beaten with such viciousness, repeatedly beaten over an hour to the extent her death was caused."

On direct appeal, defendant argued, 
inter
 
alia
, that the State had failed to prove that he acted with any of the mental states specified in the murder statute.  The Illinois Supreme Court held that the trial court could have inferred, based on the evidence, that defendant acted with the necessary mental state in bringing about Jasmin's death.  
Tye
, 141 Ill. 2d at 16.  The court also upheld the propriety of the trial judge's reference to his own background and experience in assessing the severity of defendant's crime.  
Tye
, 141 Ill. 2d at 20-24.  Defendant's conviction and death sentence were affirmed.  Three justices, although they concurred with the majority's affirmance of the murder conviction and agreed that defendant was eligible for the death penalty because Jasmin's death had resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty, dissented from the majority's view that death was an appropriate sentence.  
Tye
, 141 Ill. 2d at 34-40 (Ryan, J., concurring in part and dissenting in part, joined by Clark and Calvo, JJ.).

In 1992, defendant filed a petition for postconviction relief.  In 1994, defendant filed an amended petition in which he alleged that he had received ineffective assistance of counsel at both the guilt-innocence and sentencing phases of his trial.  Defendant alleged that he had received ineffective assistance of counsel during the guilt-innocence portion of his trial because, among other things, his trial counsel failed to locate and introduce a hospital document indicating that the victim appeared to have vomited prior to her death, failed to investigate or introduce any evidence regarding possible abuse and corporal punishment inflicted upon defendant during his childhood, and failed to either conduct an investigation or employ experts to assess defendant's intellectual capacity to waive his 
Miranda
 rights or file a motion to suppress defendant's statements to police.  Defendant's claims that he received ineffective assistance at the death-penalty-eligibility and sentencing portions of his trial were based on allegations that his trial counsel had failed to investigate the possibility that there was evidence that would have precluded a finding that defendant was eligible for the death penalty, failed to develop or present a defense mitigation theory at sentencing, failed to investigate or introduce evidence of defendant's mental state at the time of the crime, defendant's social or psychological history, or of defendant being under the influence of an extreme mental or emotional disturbance at the time of the crime, and failed to introduce records corroborating defendant's testimony that he attempted to resuscitate the victim after finding her unconscious.  Defendant's petition contained a large amount of material in support of his allegations, including 
an affidavit signed by defendant's trial counsel in which counsel 
acknowledged failing to take various actions during trial and during the sentencing hearing.

The circuit court granted the State's motion to dismiss the amended petition with respect to the guilt-innocence phase without an evidentiary hearing.  The circuit court did hold an evidentiary hearing, however, regarding defendant's claim of ineffective assistance of counsel at sentencing.  Following a hearing, the circuit court found that defendant had received ineffective assistance of counsel at sentencing and ordered a new sentencing hearing.

A new sentencing hearing was held. At the new sentencing hearing, defendant waived his right to a jury.  The State and defendant both called a number of witnesses in aggravation and mitigation.  Defendant called relatives to testify in mitigation as to his good character and difficult upbringing, which included being whipped with an extension cord.  Eileen McCarthy, a mitigation specialist/forensic social worker with the capital litigation division of the Illinois State Appellate Defender's office, testified regarding her compilation of a biographical, psychological, and social history of defendant.  Among other things, she testified to the abuse defendant was subjected to during his own childhood.  Clinical psychologist Dr. Mark Ramsden stated in an affidavit that, having examined defendant, he believed defendant committed the murder while under the influence of "an extreme mental or emotional disturbance, although not such as to constitute a defense to the prosecution," and that defendant's own abusive childhood had led him to beat Jasmin.  Dr. Ramsden also found that defendant was dyslexic, unable to read at a minimally functional level, and had a full-scale IQ of 86.  At the resentencing hearing, Dr. Michael Gelbort, a clinical psychologist practicing in the area of neuropsychology, testified regarding a neuropsychological examination he gave to defendant.  Dr. Gelbort concluded that defendant had an "organic brain dysfunction" that led to, among other things, a "disinhibition" that manifested itself in an overreaction in terms of whipping the victim and an inability to fully understand the ramifications of his actions.

At the sentencing hearing, the circuit court first determined that defendant was eligible for the death penalty.  Specifically, the court held:

"I think that the conduct in this case is brutal and heinous indicative of wanton cruelty.  And I focus on the language of the opinion of the Supreme Court that says although the defendant in the present case did not have a history of prior criminal conduct, these actions here were triggered by nothing more *** egregious than a three-year-old child's refusal to go to bed when she was told to do so, and using a belt and an extension cord the defendant beat the young girl for about an hour.  According to the autoptic evidence the child's injuries were *** too numerous to count and were present over virtually the entire body.

The defendant *** was 28 years old at the time of the occurrence.  And there was no showing -- considering all the evidence adduced in the hearing thus far, in reaching the same conclusion there was no evidence of drug or alcohol use by the defendant, that would not excuse but explain the conduct.  And I do not find the defendant at the time was laboring under an emotional or mental disturbance.  And that language of the Supreme Court also from Page 945 correctly summarizes my feelings about the same evidence after I have heard the evidence in this case.

***

The mere factor of administrating CPR subsequent to an hour of vicious flagellation of the victim is a mitigating factor but does not outweigh all the aggravating factors to determine it was brutal, heinous and indicative of wanton cruelty, and the Court so finds."

At the conclusion of the hearing, the circuit court noted that this case was unique because never, in its experience "as a lawyer, whether as a prosecutor, as a defender, and as a jurist," had it encountered a case where the cause of death was flagellation.  The court reviewed the evidence presented in mitigation and noted that much of the additional evidence presented at the second sentencing hearing was "a two-edged sword."  The court ultimately concurred, however, with Justice Ryan's conclusion in his dissent in 
Tye
, 141 Ill. 2d at 39 (Ryan, J., concurring in part and dissenting in part, joined by Clark and Calvo, JJ.), that defendant's murder of Jasmin was "an isolated act of supreme violence" and that defendant did not therefore pose such a threat to society that he must be executed.  The circuit court then sentenced defendant to natural life in prison without the possibility of parole.

Defendant now appeals.

On appeal, defendant first contends that the circuit court erred in denying him an evidentiary hearing on his postconviction petition claim of ineffective assistance of counsel at the guilt-innocence phase of his trial.  According to defendant, his amended postconviction petition demonstrated that his trial counsel failed to introduce readily available evidence that would have negated the mental state element of first-degree murder.

A postconviction petition allows a defendant to challenge a conviction or sentence by showing that a substantial deprivation of federal or state constitutional rights occurred in the proceedings that produced the judgment being challenged.  
People v. Tenner
, 175 Ill. 2d 372, 377-78, 677 N.E.2d 859 (1997). 
 A petitioner is entitled to an evidentiary hearing on the allegations in his postconviction petition where he makes a substantial showing of a violation of constitutional rights.  
People v. Coleman
, 183 Ill. 2d 366, 381, 701 N.E.2d 1063 (1998). 
 Where the 
question on review is whether defendant's allegations, liberally construed and taken as true, were sufficient to invoke postconviction relief, our review is 
de
 
novo
.  
People v. Coleman
, 183 Ill. 2d at 387-89.

To prove ineffective assistance of counsel under 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), a defendant must show that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms and that his counsel's deficient performance so prejudiced him that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different.  
People v. Towns
, 182 Ill. 2d 491, 
506, 696 N.E.2d 1128 (1998).

According to defendant, where his mental state at the time of the crime was the determining factor in whether he was guilty of first degree murder or involuntary manslaughter, his trial counsel was deficient in failing to present readily available evidence that would have negated the mental state element of first degree murder.  Specifically, defendant argues his counsel was ineffective in failing to obtain experts to evaluate his mental, psychological or social history, failing to investigate the "abundant literature" discussing adult victims of child abuse, failing to obtain experts to evaluate defendant's intellectual capacity, and failing to investigate defendant's school records to discover defendant's limited ability to read and write.  Defendant contends that his school records and the information regarding his mental capacity should have been used by trial counsel to file a motion to suppress alleging that defendant did not have the capacity to waive his 
Miranda
 rights.  Defendant also contends his trial counsel was ineffective for failing to subpoena hospital records stating that the victim appeared to have vomited prior to her death.  According to defendant, that evidence would have corroborated his statement to the police that after finding the victim with vomit in her nose and mouth, he attempted to resuscitate her by blowing in her nose and mouth.

The State contends that the doctrines of 
res
 
judicata
 and waiver apply. "[W]here a petitioner has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is 
res
 
judicata
 as to all issues actually decided by the court, and any other claims that could have been presented to the reviewing court, if not presented, are waived."  
People v. Flores
, 153 Ill. 2d 264, 274, 606 N.E.2d 1078 (1992).

Defendant responds that waiver should not apply here because his claims of ineffective assistance of counsel are based on facts that did not appear in the trial record and thus could not have been raised on direct appeal.  It is true that the waiver rule may be relaxed where the evidentiary basis for the ineffective assistance of counsel claims were outside the record or are newly discovered and could not, therefore, have been considered by a reviewing court on direct appeal.  
People v. Daniels
, 301 Ill. App. 3d 87, 97, 702 N.E.2d 324 (1998).

The hospital record indicating that Jasmin appeared to have vomited prior to her death is, arguably, newly discovered.  Defendant seeks to use the record, however, to support his claim that his trial counsel was ineffective for failing to present independent evidence to support defendant's testimony that he attempted to resuscitate Jasmin after she vomited.  At defendant's original sentencing hearing, defendant's stepmother testified that after the victim's funeral the victim's mother gave her the pajamas the victim wore the night of her death and that they had vomit on them.  She also testified that she did not tell defendant's trial counsel about the pajamas until after trial.  There was, therefore, evidence in the record upon which defendant could have argued on direct appeal that his trial counsel was ineffective for failing to seek out and present evidence to support defendant's testimony regarding the victim vomiting.  Defendant also complains that his trial counsel failed to obtain information regarding defendant's mental and educational deficiencies which he then should have used to file a motion to suppress defendant's statement to the police on the basis that defendant was unable to knowingly and intelligently waive his 
Miranda
 rights.  The trial record, however, contained the results of a November 9, 1984, court-ordered examination conducted by a psychiatrist, the purpose of which was to assess defendant's mental fitness to stand trial.  Among other things, the notes of the psychiatrist's psychological summary stated that defendant was "of estimated low average intelligence, has a moderately severe reading disability and shows deficiencies in other academic skills, including writing, spelling, and vocabulary usage."  The above information does not vary significantly from the information in defendant's school records and the affidavit of Dr. Ramsden, upon which defendant relies in his postconviction petition.  The issue of trial counsel's alleged ineffectiveness in failing to file a motion to suppress based upon defendant's mental capacity and educational background could certainly, therefore, have been raised on direct appeal.  Finally, defendant argues that his trial counsel's failure to investigate defendant's "neurological deficiencies" or social history could not have been raised on direct appeal.  In addition to the psychological assessment of defendant discussed above, defendant testified at his original trial that he had been disciplined with an extension cord as a child and that the whippings had left welts on his body.  In addition, defendant's aunt testified at his original sentencing hearing that defendant was "whipped" from time to time as a child.  So again, the record contained information upon which a claim of ineffective assistance of trial counsel could have been made on direct appeal.  Simply because a more exhaustive and thorough detailing of defendant's social history was collected for the purposes of the postconviction petition does not mean that there was no basis in the record from which to raise the issue on direct appeal.  Because the ineffectiveness of defendant's trial counsel could have been raised on direct appeal, his postconviction claim of ineffective assistance at the guilt-innocence portion of his trial is waived.  We note also that although the doctrine of fundamental fairness may justify review of an ineffective assistance claim where the same counsel represented a defendant at trial and on appeal (
People v. DeSavieu
, 256 Ill. App. 3d 731, 735, 628 N.E.2d 1117 (1993)), the defendant in the instant case was represented by different counsel on appeal than he was at trial.

We also agree with the State that defendant is merely attempting to relitigate the mental state element of his murder conviction under the guise of an ineffective assistance of counsel claim.  At trial, defendant maintained that he had not possessed any of the mental states necessary to sustain a charge of murder and testified that he had not intended to kill Jasmin and was unaware that his actions created a strong probability of death.  The trial court found that defendant had the requisite mental state to be found guilty of murder.  On direct appeal, defendant contended, 
inter
 
alia
, that the State had failed to prove that he acted with any of the mental states specified in the murder statute.  
Tye
, 141 Ill. 2d at 13.  The supreme court, relying on the disparity in size between defendant and the victim, the brutality and duration of the beating, and the severity of the victim's injuries, concluded that the trial court could have inferred that defendant acted with the necessary mental state in bringing about the child's death.  
Tye
, 141 Ill. 2d at 16.  Defendant, in his postconviction petition, argues that his trial counsel could have negated any evidence that he possessed the mental state necessary to sustain a murder conviction if he had properly investigated, gathered, and introduced evidence of defendant's neurological deficiencies, social history, and educational background, and had subpoenaed and introduced a hospital record indicating that the victim may have vomited prior to her death.  We find that defendant's argument amounts to nothing more than an attempt to revisit the mental state element of his murder conviction under the guise of an ineffective assistance of counsel claim.  See 
Flores
, 153 Ill. 2d at 277-78 (holding that a petitioner may not evade the operation of waiver and 
res
 
judicata
 simply by rephrasing previously addressed issues in constitutional terms in his postconviction petition).  
In so finding, we emphasize that little of the evidence defendant maintains his trial counsel should have gathered and introduced goes to the ultimate issue of defendant's mental state at the time of the killing because the evidence would not negate the evidence the supreme court has already found allowed the trial court to infer that defendant possessed the necessary mental state.

Assuming, 
arguendo
, that defendant's claims regarding the guilt-innocence phase of his trial were not either waived or barred by 
res
 
judicata
, we find that defendant has failed to show either that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms, or that his counsel's allegedly deficient performance so prejudiced him that a reasonable probability exists that but for the deficient performance, the result of the proceeding would have been different.  See 
Towns
, 182 Ill. 2d at 506.
  In considering a claim of ineffective assistance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.  In addition, where defendant makes an insufficient showing regarding one component of the inquiry, there is no need to address both components.  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. 2069.
   We will first address counsel's alleged failure to investigate defendant's mental and educational deficiencies and resulting failure to file a motion to suppress defendant's statement to the police on the basis that defendant was unable to knowingly and intelligently waive his 
Miranda
 rights.  As noted previously, the trial record contained a court-ordered examination, conducted by a psychiatrist and dated November 9, 1984, the purpose of which was to assess defendant's mental fitness to stand trial.  The psychiatrist, in his notes, discussed defendant's educational background, including defendant's statement that he dropped out of high school because of his poor performance, and observed that defendant was "of estimated low average intelligence," had a moderately severe reading disability, and showed deficiencies in other academic skills, including writing, spelling, and vocabulary usage.  Because that information does not vary significantly from the information that defendant contends an adequate investigation would have revealed, we conclude that a reasonable investigation of defendant's mental and educational limitations did, therefore, take place.  Moreover, although the affidavits and exhibits in support of defendant's postconviction petition indicate that defendant struggled in school, particularly in reading, and dropped out in eleventh grade, they do not either assert or establish that defendant was unable to knowingly waive his 
Miranda
 rights.  Because there is nothing to indicate that any motion to suppress filed would have been successful, it cannot be said that defendant was prejudiced by his trial counsel's failure to file such a motion.

Defendant also contends that his trial counsel was ineffective for failing to investigate defendant's mental history in order to discover his "neurological deficiencies."  As discussed earlier, a psychological assessment of defendant was conducted to determine his fitness to stand trial.  The examiner noted, 
inter
 
alia
, that defendant was neatly dressed and groomed, was coherent and oriented, denied psychotic symptoms, displayed no psychotic behavior, was alert, showed no confusion, and did not exhibit any gross memory problems.  There is nothing in the report that would suggest that defendant suffered from "organic brain dysfunction," as Dr. Gelbort testified to at defendant's new sentencing hearing.  "Where the circumstances known to counsel at the time of his investigation do not reveal a sound basis for further inquiry in a particular area, it is not ineffective for the attorney to forgo additional investigation."  
People v. Orange
, 168 Ill. 2d 138, 150, 659 N.E.2d 935 (1995).  Considering the result of defendant's pretrial examination, it cannot be said that the failure of defendant's trial counsel to further investigate defendant's mental condition fell below an objective standard of reasonableness.

Defendant further maintains that his trial counsel was ineffective in failing to investigate his social history of corporal punishment as a child and how his history of abuse may have influenced his behavior in beating the victim.  Defendant, testifying at his original trial, acknowledged that he had been disciplined with an extension cord as a child and that it had left welts on his body.  But defendant also gave conflicting testimony as to whether the beatings had hurt and noted that the whippings had made him "straighten up in a lot of ways."  At his original sentencing hearing, defendant's aunt testified that although defendant had been "whipped" as a child from time to time, he had a normal childhood and had not been abused.  Although the materials supporting defendant's postconviction petition assert that defendant was beaten frequently by his great-grandparents with an extension cord while growing up, defendant, in his original presentencing investigation, told the investigator that he had a "good relationship" with his great-grandparents while growing up.  Considering defendant's own testimony and that his own relatives testified he was not abused while growing up, it cannot be said that his counsel's failure to further explore defendant's social history or introduce evidence regarding adult victims of child abuse constituted deficient performance.

Nor do the allegations of ineffective assistance in defendant's petition regarding his alleged "neurological deficiencies" and social history entitle him to an evidentiary hearing where they fail to show that if evidence relating to those subjects had been introduced, there is a reasonable probability that the final result of the trial would have been different.  According to defendant, if his counsel had not failed to investigate, consider, or introduce evidence and expert testimony supporting and corroborating defendant's testimony that he did not intend to or know that his actions created a strong probability of death or great bodily harm, he would have been found guilty of involuntary manslaughter rather than first degree murder.  We disagree.  The various judges who have examined the evidence in this case, and whose written and spoken opinions on the evidence are referenced throughout this opinion, have used consistently strong language in describing the brutality of the beating that led to Jasmin's death.  The judges making those statements made them despite their knowledge that defendant had testified he was subjected to whippings as a child and did not mean to hurt the victim.  While the materials supporting defendant's postconviction petition indicate that he was subjected to corporal punishment while growing up, there was no testimony from anyone demonstrating that what defendant experienced as a child was similar to the beating he subjected the victim to here.  Moreover, nothing in the supporting material can begin to negate the inference that defendant, in beating the three-year-old victim over the course of an hour over virtually her entire body with a belt, belt buckle, and extension cord while holding her up by her arm until the arm broke and until her body went into shock, did not know that his acts created a strong probability of death or great bodily harm.  In so ruling, we recall the Illinois Supreme Court's opinion in 
People v. Ward
, 101 Ill. 2d 443, 463 N.E.2d 696 (1984), where the defendant, like the defendant here, maintained he had not intended to fatally beat a child to death.  The court noted that even assuming, 
arguendo
, that the defendant's statement that he "didn't mean to" kill the victim was considered evidence that he acted recklessly, the severity of the beating negated any suggestion that his conduct was only reckless.  
Ward
, 101 Ill. 2d at 451-52.  The court went on to quote approvingly the words of a concurring justice in the Fifth District's opinion regarding that same case, who stated
:

"'[T]o allow an excessively savage beating of a child to be considered "reckless" when such a beating made on an adult would be intentional as a matter of law defies common sense. *** I believe that the beating death of any victim, including a child, which is so extensive as to negate any possibility it was inflicted recklessly, is insufficient evidence to support an involuntary manslaughter instruction.'"  
Ward
, 101 Ill. 2d at 452-53, quoting 
People v. Ward
, 112 Ill. App. 3d 547, 558, 445 N.E.2d 883 (1983) (Welch, J., specially concurring).

Where the beating death of a mere infant of three occurred in the manner in which it did here, to term such a beating mere recklessness belies all reason and common sense.  We note also that despite the fact that defendant's request for an evidentiary hearing on his counsel's alleged ineffectiveness at the guilt-innocence portion of his trial was denied, defendant introduced extensive evidence of his mental state and social history through the testimony of Dr. Gelbort and various relatives at the postconviction proceedings regarding resentencing.  Despite hearing the evidence regarding defendant's abusive childhood and "organic brain dysfunction," the circuit court stated that it did not find defendant was laboring under an emotional or mental disturbance at the time of the crime.  We view that finding as additional support for our holding that defendant's petition fails to establish that, but for counsel's deficient performance, the result of the trial would have been different.

The only evidence that is arguably "newly discovered" or "outside the record" is a hospital record indicating that the victim appeared to have vomited prior to her death.  The trial court heard defendant's testimony at trial that the victim began to vomit after the beating and that at that time he attempted to help her.  The trial court also heard testimony indicating that a police officer found no evidence of vomit at the scene of the crime and that the medical examiner found no evidence of vomit in Jasmin's mouth or nostrils.  The hospital record arguably would have corroborated defendant's testimony.  Defendant's trial counsel acknowledged in his postconviction affidavit that he was unaware of the hospital record and made no attempt to subpoena such records.  However, the record does not support a finding that the introduction of the corroborating evidence would have changed the result of the trial.  Again, as noted by the supreme court, the inference that defendant possessed the mental intent necessary was created by the size disparity between defendant and the victim, the brutality and duration of the beating, and the severity of the victim's injuries.  
Tye
, 141 Ill. 2d at 16.  We fail to see how corroboration of any actions defendant took well after the beating would have negated any of the evidence relied upon by the court in finding he had the requisite mental state.  In this respect we agree with the circuit court's rejection of defendant's same argument.  The circuit court found, in the course of the postconviction proceedings, that evidence regarding the vomit related more to mitigation and did not "vitiate the evidence which is substantial to support the conviction."  Defendant argues that the lack of evidence corroborating the fact that the victim vomited allowed the State to portray him as a liar.  We note, however, that it is not uncommon for the State to attack the credibility of testifying defendants and that the State had available other means to do so here, where defendant made initial false statements to the police in which he told the police that Pamela was responsible for the victim's injuries.

In sum, we find that defendant's postconviction petition allegations that he received ineffective assistance of counsel in the guilt-innocence portion of his trial fail to show either that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms or that his counsel's deficient performance so prejudiced him that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different.

Defendant next contends that the circuit court erred in sentencing him to natural life without the possibility of parole.  
 The State argues that defendant has waived consideration of any sentencing issues by failing to 
object during the sentencing hearing and failing to raise the issues in a written posthearing motion.  Defendant responds that he adequately preserved his sentencing issues by filing, in the course of the resentencing process,
 a motion to reconsider the circuit court's finding of exceptionally brutal or heinous behavior indicative of wanton cruelty and a memorandum of law regarding statutory sentencing options, and by listing the resentencing as one of the grounds in his notice of appeal filed after the resentencing.

It is well established that to preserve a sentencing issue for appeal, a defendant is required to file a written motion challenging the aspect of his sentence with which he disagrees within 30 days following the imposition of such sentence.  See 730 ILCS 5/5-8-1(c) (West 1996); 
People v. Reed
, 282 Ill. App. 3d 278, 280, 668 N.E.2d 51 (1996).  The 
Reed
 court noted that a written motion pursuant to section 5-8-1(c)
 of the Unified Code of Corrections (730 ILCS 5/5-8-1(c) (West 1996)) serves the important goal of promoting judicial economy and finality of judgments by highlighting any alleged error for the circuit court and granting it the opportunity to reconsider the appropriateness of the sentence imposed and to correct any errors made.  
Reed
, 282 Ill. App. 3d at 281.  Listing a sentencing issue in a notice of appeal neither satisfies the written motion requirement of section 5-8-1(c) nor promotes the above goal.  Nor do the motions filed by defendant prior to the imposition of his sentence satisfy the statutory requirement.  
We find that defendant has waived his claims of error regarding sentencing by failing to file a written motion following his resentencing to life in prison.

Defendant, in his reply brief on appeal, responds that this court should review the sentencing issues as plain error.  S
entencing errors affecting substantial rights may be analyzed under the doctrine of plain error, regardless of a defendant's failure to file a postsentencing motion under section 5-8-1(c).  
People v. Whitney
, 297 Ill. App. 3d 965, 967, 697 N.E.2d 815 (1998), 
aff'd
, 188 Ill. 2d 91, 720 N.E.2d 225 (1999).  "The plain error rule is a limited exception to the waiver rule and may be invoked only if the evidence is closely balanced, or where the alleged error is so fundamental that it may have deprived the defendant of a fair sentencing hearing."  
People v. Beals
, 162 Ill. 2d 497, 511, 643 N.E.2d 789 (1994).
  
Defendant, while maintaining that a plain error analysis is applicable here, merely argues that the trial court committed plain error by abusing its discretion in sentencing.  Where defendant neither argues the evidence was closely balanced nor explains why the errors were so severe that they must be remedied to preserve the integrity of the judicial process, he has waived any argument that plain error should apply.  See 
People v. Nieves
, 192 Ill. 2d 487, 503, 737 N.E.2d 150 (2000).

Waiver aside, 
a sentence will be disturbed on appeal only if the sentencing court abused its discretion.  
People v. Perruquet
, 68 Ill. 2d 149, 153, 368 N.E.2d 882 (1977).
  Defendant contends that the circuit court abused its discretion when it found, in resentencing defendant to natural life in prison, that defendant's actions were exceptionally brutal and heinous and indicative of wanton cruelty.

The sentencing statute in effect at the time of the crime, stated, in pertinent part:

"(1) for murder, (a) a term shall be not less than 20 years and not more than 40 years, or (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9-1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment ***."  Ill. Rev. Stat. 1983, ch. 38, par. 1005-8-1(a)(1).

Section 9-1(b) of the Criminal Code of 1961 contained aggravating factors which, if proved beyond a reasonable doubt, would allow a defendant to be sentenced to death.  Ill. Rev. Stat. 1983, ch. 38, pars. 9-1(b),(f).  Thus, where the murdered individual was under 12 years of age and the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty, a defendant found guilty of first degree murder could be sentenced to death or natural life imprisonment.
  Ill. Rev. Stat. 1983, ch. 38, pars. 9-1(b)(7), 1005-8-1(a)(1).

Defendant contends that the circuit court abused its discretion in finding defendant's actions to be exceptionally brutal and heinous and indicative of wanton cruelty where 
there was no evidence indicating that the killing of Jasmine was premeditated or that he intended to cause death.  Defendant also relies on the fact that he has expressed remorse for his acts, had no prior criminal history, and cooperated with the police.  Finally, defendant maintains that he attempted to help the victim after it became evident she was severely injured by attempting to resuscitate her and by seeking help.

Defendant cites to various cases in which a lack of premeditation, an attempt to aid, a showing of remorse, and a lack of prior criminal history were named as factors considered by courts in reaching a determination as to whether an offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  See 
People v. Andrews
, 132 Ill. 2d 451, 466, 548 N.E.2d 1025 (1989) (relying on the lack of previous violent crimes committed by defendant, lack of premeditation, and defendant's expression of remorse in finding that the defendant's acts were not exceptionally brutal or heinous); 
People v. Taylor
, 278 Ill. App. 3d 696, 699, 663 N.E.2d 1126 (1996) (noting that courts, in determining whether an offense was accompanied by exceptionally brutal or heinous behavior, have considered evidence of a defendant's premeditation, his behavior at the time of the offense, an expression of remorse for his conduct, and a prior criminal history); 
People v. Mangum
, 260 Ill. App. 3d 631, 642, 632 N.E.2d 1097 (1994) (cited for its observation that "[i]t would seem that a defendant acting with wanton cruelty toward his victim would not bother to go to the aid of that victim").

Defendant's lack of premeditation, lack of prior criminal history, and alleged attempt to aid the victim when the severity of her condition became apparent were all mentioned by the circuit court in the course of making its finding that defendant's conduct was brutal and heinous indicative of wanton cruelty.  The circuit court determined, however, that the defendant's use of a belt and extension cord to brutally beat his three-year-old daughter for an hour simply because she refused to go to bed when told, and which resulted in injuries too numerous to count over virtually her entire body, outweighed any of the factors cited by defendant.  The circuit court noted that never "in [its] experience as a lawyer, whether as a prosecutor, as a defender, and as a justice, [had it] ever encountered a case where the cause of death was flagellation."  The circuit court, in determining that defendant's behavior was brutal, heinous, and indicative of wanton cruelty, also found that defendant's attempt to aid the victim "subsequent to an hour of vicious flagellation" 
was a mitigating factor but failed to outweigh all the aggravating factors.  A different judge, in originally sentencing defendant, noted that in his 25 years in the criminal justice system as a homicide detective and judge, he had "never seen a child beaten with such viciousness."  The Illinois Supreme Court, in 
People v. Tye
, 141 Ill. 2d at 30-32, similarly found that the evidence established defendant's conduct was exceptionally brutal and heinous indicative of wanton cruelty.
(footnote: 2)  Aside from a hospital document indicating that the victim appeared to have vomited before her death,
 no significant new evidence regarding the essential nature of the beating and manner in which Jasmin died was introduced at the resentencing.  
The circuit court did not abuse its discretion in finding that defendant's conduct was exceptionally brutal and heinous indicative of wanton cruelty.

Defendant next maintains that in sentencing him to natural life in prison, the circuit court failed to consider the evidence establishing his rehabilitative potential.  Defendant specifically refers to the testimony of Dr. Gelbort, a clinical psychologist specializing in neuropsychology, who testified regarding defendant's "organic brain dysfunction" and stated that "given a very supportive environment with a lot of remedial education," persons with such a dysfunction may be able to overcome such a defect to some degree.  Defendant also relies on the testimony of Eileen McCarthy, a forensic social worker who had examined defendant's social and family history and testified that defendant had tried to better himself while in prison.  Finally, defendant cites the testimony of 
Rav
inia Jones-Owusu, a divinity student who had ministered to defendant in prison and who testified that defendant had "a great sense of personal responsibility" and "the spirit of a repentant heart."

Defendant maintains that the circuit court's failure to comment on the above evidence of defendant's rehabilitative potential, along with the severity of the sentence handed down, indicates that the circuit court failed to account for defendant's rehabilitative potential in sentencing.

In determining a sentence, the trial court must balance the interests of society against the ability of a defendant to be rehabilitated.  
People v. Banks
, 241 Ill. App. 3d 966, 982, 609 N.E.2d 864 (1993).  
Although the sentencing court 
was required to consider defendant's rehabilitative potential, it was not required to give greater weight to that factor than to the seriousness of the offense or other aggravating factors.  
People v. Fort
, 229 Ill. App. 3d 336, 
341-42, 592 N.E.2d 1205 (1992); 
People v. Brajcki
, 150 Ill. App. 3d 506, 515, 501 N.E.2d 774 (1986)
.  
In fact, the seriousness of the crime committed is considered the most important factor in fashioning an appropriate sentence.  
People v. Adamcyk
, 259 Ill. App. 3d 670, 681, 631 N.E.2d 407 (1994).  A court is not required to set forth every reason or the weight it gave each factor considered in determining a defendant's sentence. 
 
Brajcki
, 150 Ill. App. 3d at 515.  
Where evidence in mitigation
 is before the court, it is presumed that the court considered the evidence, absent some indication, other than the sentence imposed, to the contrary.  
People v. Morgan
, 306 Ill. App. 3d 616, 633, 713 N.E.2d 1203 (1999).  Further, "[a] sentence is presumptively correct, and only where such a presumption has been rebutted by an affirmative showing of error will a reviewing court find that the trial court has abused its discretion." 
 
Fort
, 229 Ill. App. 3d at 340
.  No such showing has been made here.

Defendant cites to a number of child homicide cases in which lesser sentences than life without the possibility of parole were given, and attempts to distinguish child homicide cases in which a sentence of life without parole was imposed.  The practice of comparing a sentence to sentences imposed in unrelated cases has been explicitly rejected by the Illinois Supreme Court in 
People v. Fern
, 189 Ill. 2d 48, 55, 723 N.E.2d 207 (1999), on the basis that such an analysis does not comport with Illinois' sentencing scheme's goal of individualized sentencing and would unduly interfere with the sentencing discretion vested in the trial courts.

There is no indication in the record that
 the circuit court considered any improper factors or failed to take defendant's rehabilitative potential into account.  The circuit court did not abuse its discretion in imposing a sentence of natural life in prison without the possibility of parole.

The parties have filed supplemental briefs on appeal following the Supreme Courts' opinion in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  In 
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

As noted earlier, the sentence for first degree murder at the time of the crime here was 20 to 40 years, or, if the court found "that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9-1 of the Criminal Code of 1961" were present, the court could sentence the defendant to a term of natural life imprisonment.  Ill. Rev. Stat. 1983, ch. 38, par. 1005-8-1(a)(1).

Defendant challenges the constitutionality of section 5-8-1(a)(1), arguing that pursuant to 
Apprendi
, the section is unconstitutional in that it fails to afford a defendant the option to elect a jury to determine whether a murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

We find that there was no 
Apprendi
 violation in sentencing defendant.  At both defendant's original sentencing and the new sentencing hearing granted following the filing of his postconviction petition, the State sought the death penalty.  At both sentencing hearings, defendant waived his right to have a jury determine his eligibility for the death penalty.  At both sentencing hearings, defendant was found eligible for the death penalty based on an aggravating factor in section 9-1 of the Criminal Code of 1961.  Ill. Rev. Stat. 1983, ch. 38, par. 9-1(b)(7).  Specifically, it was found that "the murdered individual was under 12 years of age and the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty."  Ill. Rev. Stat. 1983, ch. 38, par. 9-1(b)(7).  Pursuant to statute, the existence of the above aggravating factor was required to be established by the State beyond a reasonable doubt.  Ill. Rev. Stat. 1983, ch. 38, par. 9-1(f).  Although defendant was not ultimately sentenced to death upon his resentencing, he had, but waived, the opportunity to have a jury make a determination as to whether the aggravating factor had been established beyond a reasonable doubt, and, following his jury waiver, the circuit court found that the State had proved the aggravating factor necessary for the imposition of any penalty up to and including death beyond a reasonable doubt.  Thus, no violation of the rule set forth in 
Apprendi
 occurred.  Moreover, 
Apprendi
 does not apply here because, where defendant's acts made him eligible for the death penalty, the imposed sentence of natural life imprisonment was not beyond the statutorily provided maximum.

In reaching our decision, we find 
People v. Williams
, 317 Ill. App. 3d 945, 742 N.E.2d 774 (2000), to be instructive.  There, the defendant, who had been sentenced to natural life in prison, also challenged section 5-8-1(a)(1) (730 ILCS 5/5-8-1(a)(1) (West 1994) (formerly Ill. Rev. Stat. 1983, ch. 38, par. 1005-8-1(a)(1))), as violating the rule announced in 
Apprendi
.  The court first noted that section 9-1(b) of the Criminal Code of 1961 allows the death penalty to be imposed if one of the aggravating factors therein is found and that the State had the burden of proving the aggravating factor beyond a reasonable doubt.  
Williams
, 317 Ill. App. 3d at 957.  In 
Williams
, as here, the trier of fact found beyond a reasonable doubt that one of the aggravating factors existed and the defendant was eligible for the death penalty.  After then hearing evidence in aggravation and mitigation, the trial court in 
Williams
 imposed a sentence of natural life imprisonment rather than death.  On appeal, the court concluded that because the aggravating factor relied upon in imposing a term of natural life imprisonment was proved beyond a reasonable doubt, there was no violation of the rule set forth in 
Apprendi
.  
Williams
, 317 Ill. App. 3d at 958.  The court in 
Williams
, 317 Ill. App. 3d at 958, also went on to hold that the Supreme Court had excluded capital punishment sentencing schemes from 
Apprendi
 analysis.

Accordingly, the denial of defendant's postconviction petition on the guilt-innocence portion of his trial is affirmed, as is defendant's sentence of life imprisonment without the possibility of parole, imposed upon resentencing following defendant's filing of a postconviction petition.

Affirmed.

CAHILL, P.J. and GORDON, J., concur.

FOOTNOTES
1: Throughout the opinion, Judge John J. Mannion, who presided over defendant's original trial, will be referred to as the "trial court," while Judge Michael B. Bolan, who presided over defendant's postconviction proceedings, will be referred to as the "circuit court."

2: We note further that Justice Ryan, at the outset of his partial dissent, joined by Justices Clark and Calvo, noted that the victims death was "shocking and tragic" and that he did not dispute that her death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty.  
Tye
, 141 Ill. 2d at 34 (Ryan, J., concurring in part and dissenting in part, joined by Clark and Calvo, JJ.).  Thus, the trial court's finding that defendant's acts were exceptionally brutal or heinous behavior indicative of wanton cruelty was unanimously affirmed by the supreme court.