# Illinois Official Reports

## Appellate Court

---

***People v. Ressa*, 2019 IL App (2d) 170439**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUISEPPE RESSA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0439 |
| Filed | March 29, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-CF-1115; the Hon. Robert A. Miller, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alison H. Motta, of Motta & Motta LLC, of Aurora, and Kevin E. Bry, of Oak Park, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Mary A. Fleming, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Zenoff and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Guiseppe Ressa, was charged with multiple counts of child abduction (720 ILCS 5/10-5(b)(10) (West 2014)), aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)), and aggravated kidnapping (*id.* § 10-2(a)(2)), stemming from his interactions with two sets of siblings, the first at an apartment complex in Lisle on May 27, 2015, and the second at an apartment complex in Addison on June 1, 2015. Following a bench trial, defendant was found guilty on two counts of aggravated criminal sexual abuse for physical contact with two of the children during the two incidents. Defendant was also convicted on five counts of child abduction, for luring or attempting to lure all of the children into vestibules within their apartment complexes for an unlawful purpose. Defendant, who has been diagnosed with "delusional disorder, grandiose type (with religious content), continuous," was sentenced to an aggregate term of 20 years' imprisonment.

¶ 2 On appeal, defendant contends that (1) his trial counsel was ineffective for failing to pursue an insanity defense, (2) the trial court abused its discretion in admitting into evidence numerous of defendant's writings and other materials, (3) the evidence was insufficient to support the convictions of aggravated criminal sexual abuse and one of the convictions of child abduction, and (4) the trial court abused its discretion in sentencing him to an aggregate term of 20 years' imprisonment. We affirm.

¶ 3 I. BACKGROUND

¶ 4 A. Charges

¶ 5 On June 30, 2015, defendant was charged by indictment with aggravated kidnapping of Jazlene (born April 3, 2008) (count I), aggravated kidnapping of Adrien (born November 2, 2011) (count II), aggravated criminal sexual abuse of Jazlene (count III), child abduction of Jazlene (count IV), child abduction of Adrien (count V), child abduction of Jackilynne (born February 25, 2009) (count VI), aggravated kidnapping of Jackie (born August 31, 2007) (count VII), attempted aggravated kidnapping of Jackie (count VIII), aggravated kidnapping of Johnny (born July 2, 2009) (count IX), aggravated criminal sexual abuse of Jackie (count X), child abduction of Jackie (count XI), and child abduction of Johnny (count XII).

¶ 6 B. Trial

¶ 7 On May 27, 2015, then-seven-year-old Jackie and her younger brother, Johnny, were at the playground of their apartment complex in Lisle. They were joined later by their neighbors, then-seven-year-old Gael and his three-year-old sister, Sophia. Defendant approached and started interacting with these children, talking to them, proposing games, and offering candy and cookies.

¶ 8 Defendant tried to lure Johnny with a toy. Johnny started to go with him until Jackie intervened. Defendant then tempted Jackie, offering her a cookie to lure her into the building, but she resisted. Jackie testified that defendant carried her, bumping her head, and then placed her on the slide at the playground and sat next to her. She attempted to get off the slide, but defendant would not let her go. Defendant pushed her down every time she tried to get up until eventually Jackie and Johnny went home for dinner.

¶ 9    Gael testified that he was playing hide and seek with Jackie when he saw a stranger grab her hand and pull her inside the building. Gael did not know how she managed to escape. Later, Gael saw the stranger push her onto the slide. The stranger was on top of Jackie. After Jackie and Johnny went home, Gael continued to play at the park with Sophia. When Gael and Sophia's dad, Jose, arrived, the stranger left and headed to his car.

¶ 10    Jose testified that he saw defendant at the park with his children and got a look at defendant's car as defendant left. He searched for defendant but did not find him, so he went to the police.

¶ 11    On June 1, 2015, unaware that the police were watching him, defendant went to an apartment complex in Addison and encountered Jazlene, Jackilynne, and Adrien. Defendant gave them candy and offered more but told them that to get more they had to follow him. Jackilynne refused, but Jazlene and Adrien followed defendant into a building vestibule, where they were alone. Defendant was out of candy, so he offered Jazlene $5. Then defendant crouched down and started touching her. He was rubbing her leg and talking to her when the police arrived. Without speaking, defendant stood up and started to leave the building, but the police asked him what he was doing.

¶ 12    Jackilynne testified that defendant came to the entryway to her apartment building and asked if she wanted some candy. Defendant gave her sour gummy candy. After that, defendant touched her. Defendant asked Jackilynne her name and where she lived. Defendant told her that if she wanted more candy she could go to his car. Jackilynne did not go. Defendant then went to his car to get a white hat. Jackilynne stated that she forgot to tell anyone that defendant tried to get her to go to his car.

¶ 13    A court order allowed a tracking device to be placed on defendant's car, and Detective Kevin Licko of the Lisle Police Department conducted surveillance of defendant. While school buses were dropping children off in the Aspen Ridge Apartment Complex, Licko observed defendant drive by slowly, looking in the direction of the children. Defendant then drove to the Carrollwood Apartment Complex and then to another apartment complex. Licko observed defendant approach three children and appear to give them something. Licko called other detectives when defendant was out of his line of sight.

¶ 14    Detectives Loudon and Eccart of the Lisle Police Department responded to Licko's call. They proceeded on foot and saw defendant with three children. Defendant gave the children something from a yellow bag. Defendant then went to his car and retrieved a white hat. Defendant returned to the children and walked into a building with two of them. Loudon and Eccart followed and saw that defendant was crouched down by a little girl. As soon as Loudon and Eccart found defendant and the children, defendant walked away. Loudon and Eccart followed, with their badges hanging around their necks. They asked defendant if he would talk to them. He agreed and told them that he lived in the apartment complex but then stated that he did not live there. Defendant claimed that he was shopping for apartments but then said that he was there to visit his friend Tommy. When the officers asked defendant to call Tommy, defendant said that he was not doing anything wrong. Loudon offered to call Tommy, but defendant could not remember his number. Loudon asked defendant if he could check his pockets. Defendant agreed, and Loudon found an empty Sour Patch candy bag and $5.

¶ 15    Eccart testified regarding searches of defendant's vehicle and residence. He authenticated many of the exhibits, including pictures, books, and defendant's writings, found during the searches. The State also introduced note cards, loose papers, and receipts.

¶ 16 Officer Dean Anders of the Lisle Police Department testified regarding the search of defendant's cell phone. Defendant's browsing history showed news stories about murders and sexual assaults of children. Anders also found research of stories about the May 27, 2015, incident, which were published before defendant was charged.

¶ 17 The trial court found defendant not guilty of counts I, II, VII, VIII, and IX. The trial court found defendant guilty of counts III, IV, V, VI, X, XI, and XII, which included two counts of aggravated criminal sexual abuse and five counts of child abduction. Defendant filed a motion to reconsider or, in the alternative, for a new trial, which was denied. The court sentenced defendant to an aggregate term of 20 years' imprisonment. Defendant timely appeals.

¶ 18                                    II. ANALYSIS

¶ 19                          A. Ineffective Assistance of Counsel

¶ 20 Defendant first claims that his trial counsel was ineffective for failing to pursue an insanity defense. The State responds that defendant's claim must fail because the record does not show what defense counsel did or did not do to investigate an insanity defense. We agree.

¶ 21 To prevail on an ineffectiveness claim, a defendant must first establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The defendant must then show that counsel's deficient performance resulted in prejudice to the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

¶ 22 In Illinois, a person is not criminally responsible for conduct if, at the time of the conduct, he suffered from a mental disease or defect such that he lacked substantial capacity to appreciate the criminality of his conduct. 720 ILCS 5/6-2(a) (West 2014). When a defendant raises the affirmative defense of insanity, he bears the burden of proving by clear and convincing evidence that he is not guilty by reason of insanity, while the State retains the burden of proving the defendant guilty beyond a reasonable doubt. *Id.* § 6-2(e).

¶ 23 The State filed a motion for a psychological evaluation of defendant in anticipation of a possible insanity defense, pursuant to section 115-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-6 (West 2014)). Section 115-6 provides for a court-ordered evaluation on the State's motion "if the facts and circumstances of the case justify a reasonable belief" that, *inter alia*, a defendant might rely on an insanity defense. *Id.* Defendant did not object, and an evaluation was conducted by Dr. Murray. Both parties received a copy of Dr. Murray's report on September 1, 2015. Dr. Murray concluded that "[defendant] does not present with symptoms of a psychiatric disorder that would have impaired his ability to lack substantial capacity to appreciate the criminality of his conduct between May 27, and June 1, 2015. These findings are not consistent with the insanity verdict." The State points out that this is the only evidence in the record regarding a possible insanity defense and that there thus is no evidence to support defendant's claim that defense counsel should have brought an insanity defense.

¶ 24 There certainly appears to be evidence in the record of defendant's mental illness. Defendant cites a myriad of examples, such as defendant's statement comparing himself to Jesus and other "disturbing and frankly sick statements." However, bizarre behavior or delusional statements do not compel an insanity finding, as a defendant can suffer mental

illness without being legally insane. See, *e.g.*, *People v. Gilmore*, 273 Ill. App. 3d 996, 1000 (1995).

¶ 25 Defendant cites *People v. Murphy*, 160 Ill. App. 3d 781 (1987), to support his claim that counsel was ineffective. In *Murphy*, the court held that, based on the defendant's assignment to a residential treatment unit and other circumstances, defense counsel had the affirmative obligation to make further inquiry into the defendant's mental condition. The court found that the defendant was denied the effective assistance of counsel where reasonable grounds existed to question his sanity or competency but defense counsel failed to explore the issue. *Id.* at 789. Unlike in *Murphy*, the record here does not reveal whether counsel investigated the issue. It is possible that counsel did investigate and received information that would not support an insanity defense. We also cannot determine whether defendant was prejudiced by counsel's decisions.

¶ 26 Defendant's reliance on *Wilson v. Gaetz*, 608 F.3d 347 (7th Cir. 2010), similarly fails. In *Wilson*, defense counsel raised an insanity defense without an expert opinion or evaluation regarding sanity. He relied instead on the expert who had evaluated the defendant for fitness to stand trial. The Seventh Circuit noted that fitness and sanity are two separate issues and that "a fitness evaluation is not an adequate substitute" for an examination regarding sanity. *Id.* at 351. The court believed that defense counsel should have done more—he should have interviewed family members, spent more time discussing testimony with his expert, and either asked the expert to reinterview the defendant, retained a second expert, or both. *Id.* at 352. In *Wilson*, unlike in this case, the record showed counsel's improper reliance on a fitness evaluation to support an insanity defense. Here, there is no record of what actions, if any, counsel took regarding an insanity defense.

¶ 27 In sum, the record does not support a claim of ineffective assistance of counsel. The record fails to show whether defense counsel investigated and, if so, what he actually discovered. As stated, there unquestionably is evidence in the record of defendant's mental illness, but the only expert opinion is from Dr. Murray, who found that defendant was not legally insane. We observe, in passing, that if defendant has supporting evidence or can develop it, a collateral proceeding offers the appropriate forum for such a claim. See *People v. Clark*, 406 Ill. App. 3d 622, 640 (2010) (noting that claims for ineffective assistance of counsel are preferably brought on collateral review, because the trial record is often inadequate to support such a claim).

¶ 28 **B. Admission of Evidence**

¶ 29 Defendant next contends that the trial court abused its discretion by admitting certain evidence, including defendant's delusional and fantastical writings, online searches relating to well-known cases involving children who had been murdered and sexually molested, and other items relating to children. Defendant believes that this evidence was not relevant or, to the extent that it was relevant, was more prejudicial than probative.

¶ 30 Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) provides that, with certain specified exceptions, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *People v. Pikes*, 2013 IL 115171, ¶ 14. Relevant evidence is defined under the rules of evidence as " 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence.' " *People v. Montano*, 2017 IL App (2d) 140326, ¶ 74 (quoting Ill. R. Evid. 401 (eff. Jan. 1, 2011)); see also *People v. Harvey*, 211 Ill. 2d 368, 392 (2004). The trial court has discretion to determine whether evidence is relevant and admissible. *People v. Hanson*, 238 Ill. 2d 74, 101 (2010). However, the court may exercise its discretion and exclude evidence, even if it is relevant, if the danger of unfair prejudice substantially outweighs its probative value. *Id.* at 102. The trial court's admission of other-acts evidence will be upheld on appeal unless the court abused its discretion. *People v. Fretch*, 2017 IL App (2d) 151107, ¶ 47.

¶ 31    In a bench trial, such as this, a trial judge is presumed to know the law and to follow it, and this presumption is rebutted only when the record affirmatively shows otherwise. *People v. Yancy*, 368 Ill. App. 3d 381, 386 (2005).

¶ 32    Defendant filed a motion *in limine* requesting that all evidence of writings and materials taken from his home be barred. He argued that this evidence was not relevant or that its prejudicial effect substantially outweighed its probative value.

¶ 33    The State responded that the evidence at issue established defendant's intent to commit the crimes for which he was indicted. The State further noted that it reduced the number of documents it sought to introduce, to avoid the concerns raised in *People v. Gregory*, 2016 IL App (2d) 140294, ¶ 26. In *Gregory*, letters the defendant had written, which included evidence of unrelated offenses, were admitted in their entirety. We noted that deleting the evidence of unrelated offenses would have done nothing to interfere with the State's use of the letters. However, because that use was so minimal and because the evidence of unrelated offenses was so voluminous and inflammatory, we found that there was a great risk that the jury would find the defendant guilty of the charges in light of his propensity or would find him guilty not of the charges but instead of one of the uncharged acts. Thus, the letters' prejudicial effect overwhelmed their probative value. In this case, the State argued that the evidence at issue was directly relevant to the charges and should be admitted to establish defendant's intent. The State claimed that the evidence "contain[s] references to *** defendant's improper physical conduct with children, include[s] admissions of his desire to commit sexual assaults upon children, outline[s] various strategies on how to commit such acts, and otherwise demonstrate[s] his disturbing fascination with the notorious crimes committed against Samantha Runnion, who at five (5) years of age was abducted from her front yard on July 15, 2002, and thereafter raped and murdered."

¶ 34    The State continued that, to the extent that the evidence referenced actual physical contact with children, it was more like the other-crimes evidence dealt with by the supreme court in *People v. Wilson*, 214 Ill. 2d 127, 136 (2005) (the other-crimes testimony of two of the victims fit squarely within the recognized exceptions, which allow such evidence to show the defendant's intent or to show that the acts in question were not performed inadvertently, accidently, involuntarily, or without guilty knowledge). The State also noted that defendant's writings describing his contact with minors showed that his conduct in this case was not innocent behavior.

¶ 35    Defendant was charged with aggravated criminal sexual abuse and child abduction, and the State was obligated to prove defendant's intent. In particular, for the sexual-abuse charges, the State had to prove that defendant touched the minors for the purpose of his sexual gratification. See *People v. Balle*, 234 Ill. App. 3d 804, 813 (1992) (intent element of aggravated criminal sexual abuse may be established by circumstantial evidence, *i.e.*, trier of fact may consider the

circumstances and infer defendant's intent from his conduct). Here, the facts showed that defendant touched the minors in an arguably nonsexual manner. The evidence at issue puts defendant's otherwise "innocent" touching in context, as the vast majority of it revolved around defendant's obsession with sexual activity with or related to children. This evidence thus was relevant and admissible to prove intent or motive under Rule 404(b). We cannot say that the trial court abused its discretion in determining that the prejudicial effect of the evidence was outweighed by its relevance.

¶ 36 The State relies on *Fretch*, which we agree supports the trial court's ruling. In that case, the defendant argued that his prior demonstrations of sexual interest in a particular class of victim, female minors, were not probative as to whether he intended to expose his penis to the victim, a female minor. We stated:

"[E]vidence of defendant's general interest in female minors was proper as well. Defendant misunderstands the parameters on other-acts evidence. Certainly, the law does not permit the inference that because the defendant has committed some bad act or crime, he must have committed the charged offense. Just the same, the law does not shield a defendant from proof of his particular tendencies or patterns of conduct as they might bear logically on whether he acted in conformity with them in committing the charged offense. 'The case law fully establishes that the State may adduce evidence of the defendant's proclivities or past conduct in order to prove intent or knowledge in the case *sub judice*.' *People v. Gumila*, 2012 IL App (2d) 110761, ¶ 54 (the internal records in the defendant's computer showing prior visits to websites with child pornography were admissible as other-acts evidence to show that the defendant knowingly and voluntarily possessed images of child pornography found on his computer's hard drive). More specific to the present case, a defendant's prior conduct toward 'the victim or person in the same class of the victim' is admissible to show intent. *** *People v. Illgen*, 145 Ill. 2d 353, 367 (1991)." (Emphases omitted.) *Fretch*, 2017 IL App (2d) 151107, ¶ 76.

¶ 37 Similarly here, defendant's materials referencing fantasies involving children were relevant to show defendant's intent to commit the crimes with which he was charged.

¶ 38 Defendant argues that some of his writings were remote in time, dating back to 2010. While this might have affected the weight to be given the older writings, the import is that his writings were continuous from 2010 to around the time of defendant's arrest. Because this was a bench trial, we presume that the trial court gave the evidence the appropriate weight. *People v. Paige*, 378 Ill. App. 3d 95, 100 (2007) ("The experienced trial judge is presumed to have followed the law and given proper consideration to any deficiencies when weighing the evidence as the trier of fact in the bench trial."). Moreover, as we pointed out in *Fretch*, " '[t]he decision whether to admit or exclude such evidence must be made on a case-by-case basis by the trial judge responsible for evaluating the probative value of the evidence.' " *Fretch*, 2017 IL App (2d) 151107, ¶ 82 (quoting *Illgen*, 145 Ill. 2d at 370).

¶ 39 We note that defendant argues that an "expert witness or even educated defense counsel, should have put into context the prejudicial evidence if it was to be admitted, including explaining defendant's religious beliefs and delusions, and that his comments and interests were in the hereafter as opposed to in this life." Defendant's ineffective-assistance argument related to this issue is undeveloped and therefore is forfeited under Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). *People v. Young*, 365 Ill. App. 3d 753, 773 (2006).

¶ 40                              C. Sufficiency of the Evidence

¶ 41        Defendant next argues that the evidence was insufficient to support both convictions of aggravated criminal sexual abuse and the conviction on count VI for child abduction.

¶ 42        When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Howard*, 2012 IL App (3d) 100925, ¶ 8. Rather, the relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact has the responsibility to assess the credibility of the witnesses, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences therefrom. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). A reviewing court will not substitute its judgment for that of the trier of fact on issues of the credibility of the witnesses or the weight of the evidence. *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 19. We will not reverse a guilty verdict unless the evidence, viewed in the light most favorable to the prosecution, was so palpably contrary to the verdict, so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 43        A person commits aggravated criminal sexual abuse when the person is 17 years of age or over and commits an act of sexual conduct with a victim who is under 13 years of age. 720 ILCS 5/11-1.60(c)(1)(i) (West 2014). "Sexual conduct" is defined as

> "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." *Id.* § 11-0.1.

¶ 44        As to the charges of aggravated criminal sexual abuse, defendant argues that the State failed to prove that his touching of Jazlene and Jackie was for the purpose of his sexual gratification. The facts show that defendant picked up Jackie and carried her to the slide, placed her on the bottom portion of the slide, and got on the slide with her, either on top of her or next to her. Gael testified that defendant climbed on top of Jackie and pushed her down every time she tried to get up to get away from him. Defendant showed Jazlene $5 and asked if she wanted it and then began rubbing her upper leg.

¶ 45        Defendant claims that more than touching a child's leg is necessary to prove aggravated criminal sexual abuse beyond a reasonable doubt. He cites *People v. Kitch*, 239 Ill. 2d 452 (2011), *People v. Patel*, 213 Ill. App. 3d 688 (1991), and *People v. Smith*, 152 Ill. App. 3d 589 (1987), in support of his argument. Defendant claims that those cases illustrate the type of overt sexual touching that is necessary to convict, satisfying the requirements of the first part of section 11-0.1 of the Code. See 720 ILCS 5/11-0.1 (West 2014) ("touching or fondling *** the sex organs, anus, or breast of the victim"). In this case, however, defendant was accused of touching "any part of the body of a child under 13 years of age." *Id.* To satisfy this part of section 11-0.1, a defendant need not touch the sex organs, anus, or breast of the victim. Although defendant touched Jackie and Jazlene in a manner that was not necessarily visibly sexual, a rational fact finder could infer that defendant's intent was sexual from his attempt to

lure the children with candy and money to a secluded place and from his numerous writings that concerned sexual conduct with children.

¶ 46 A person commits child abduction when he intentionally lures or attempts to lure a child under the age of 17 into a building or dwelling place without the consent of the child's parent or lawful custodian for other than a lawful purpose. *Id.* § 10-5(b)(10). "Lure" is defined as any knowing act to solicit, entice, tempt, or attempt to attract the child. *Id.* § 10-5(a)(2.2).

¶ 47 As to count VI, defendant claims that Jackilynne's testimony about his attempt to lure her into his car with candy was unreliable. Although defendant impeached her testimony with the fact that she had not disclosed this previously, the evidence of defendant's attempts to lure the other children with candy and money corroborated it. Additionally, Loudon testified that he found an empty bag of Sour Patch candy in defendant's pocket. It was rational for the trial judge to believe Jackilynne, and we will not reverse under the *Collins* standard.

¶ 48                                                    D. Sentence

¶ 49 Defendant last argues that the trial court abused its discretion in sentencing him to an aggregate term of 20 years' imprisonment. Defendant argues that, although his physical contact was alarming and clearly wrong, the sentence was disproportionate as compared to other aggravated-criminal-sexual-abuse cases. In support of this claim, defendant notes that he had a nonfelony criminal record with a remote disorderly conduct charge for which he was sentenced to supervision and that the State recommended an aggregate term of only 15 years' imprisonment.

¶ 50 It is well settled that the trial court is afforded broad discretion in imposing a sentence and that its decision will not be disturbed upon review absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Steffens*, 131 Ill. App. 3d 141, 151 (1985). The trial court is granted such deference because it is generally in a better position than the reviewing court to determine the appropriate sentence, as it has the opportunity to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Stacey*, 193 Ill. 2d at 209. Consequently, a reviewing court may not overturn a sentence merely because it might have weighed the pertinent factors differently. *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 10.

¶ 51 Although the trial court is afforded broad discretion in sentencing, such discretion is not unlimited. *Stacey*, 193 Ill. 2d at 209. Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) grants a reviewing court the power to reduce an excessive sentence. *Steffens*, 131 Ill. App. 3d at 151. However, that power should be exercised cautiously and sparingly. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 52 Sentences are presumed to be proper. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). When a sentence falls within the statutorily prescribed range, it will not be found to be excessive or an abuse of discretion unless it greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. The spirit and purpose of the law are promoted when the trial court's sentence reflects both the seriousness of the offense and the defendant's rehabilitative potential. *Boclair*, 225 Ill. App. 3d at 335. However, the seriousness of the offense is the most important factor for the court to consider. *People v. Tye*, 323 Ill. App. 3d 872, 890 (2001).

¶ 53        Further, if mitigating evidence is presented at the sentencing hearing, a reviewing court presumes that the trial court considered it, absent some contrary evidence. *People v. Shaw*, 351 Ill. App. 3d 1087, 1093 (2004). The trial court is not required to recite or assign a value to each factor presented at the sentencing hearing. *Id.* The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse the sentence unless it is clearly evident that the sentence was improper. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 54        Applying these principles to the instant case, we cannot say that the trial court's aggregate term of 20 years was an abuse of discretion. Defendant was convicted of two counts of aggravated criminal sexual abuse and five counts of child abduction. Under section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 2014)), consecutive sentencing is permissive if, having considered the nature and circumstances of the offense and the history and character of the defendant, the court believes that consecutive sentences are necessary to protect the public from further criminal conduct by the defendant. Here, after considering all of the evidence, the arguments of counsel, the applicable case and statutory law, and the factors in mitigation and aggravation, the trial court found that imprisonment was necessary for the protection of the public; that probation or conditional discharge would deprecate the seriousness of defendant's conduct and be inconsistent with the ends of justice; and that consecutive terms of imprisonment were necessary to protect the public from further criminal conduct by defendant. The court stated:

> "In so finding, the Court has considered that the acts of the Defendant were planned. The Defendant has a long history of deviant thoughts and behavior including plans for future offenses. The defendant knew (the) actions in which he was engaging were unacceptable. As an example brought out by the State, he even told one minor via a text not to tell anyone about his communications because he would get in trouble. Defendant's behavior is not an aberration from otherwise appropriate behavior, but it's a continuing course of conduct. The Defendant's choice of reading material included 'The Guide to Pedophilia' and 'The Pedophile's Guide to Love and Pleasure.'
>
> I've considered Dr. Murray's report including his opinion that the Defendant presents a significant risk of violence and sexual offending against children. I've considered Dr. Kane's sex offender evaluation including her opinion that the Defendant has pedophilic disorder, delusional disorder, and antisocial traits. The Defendant's Static-99R test indicated that the Defendant has a high risk for reoffending. Dr. Kane further found that treatment for [defendant] would be extremely difficult given his intense sexual preoccupation with children. [Defendant's] fantasies and urges involving children are too intense for him to manage even if he were to have a strong commitment to treatment."

¶ 55        We observe that, at the sentencing hearing, Dr. Murray testified that defendant's self-control was diminishing significantly and Dr. Kane opined that defendant posed a risk of sexual violence toward children. In her report, Dr. Kane noted that defendant's preoccupation with Samantha Runnion added to the concern over his level of risk to the community.

¶ 56        In denying defendant's motion to reconsider the sentence, the court further explained:

> "But then what it came down to at the end was the offense and frankly the protection of the public where I have experts telling me that [defendant] has certain impulses involving offending against children and those impulses are such that

treatment would be unlikely to have any sort of regulating effect on his ability to control these sort of acts. That's something I have to take into consideration. And despite the legal arguments and arguments of counsel which again were successful on an objective analysis level, it is difficult to overcome the subjective concerns that I have concerning the protection of the public. And I felt that was an overwhelming concern. I continue to feel that and therefore I'm denying your motion to reconsider the sentence."

¶ 57　　Defendant cites *Stacey* for the proposition that his aggregate sentence is disproportionate to the nature of the offense. In *Stacey*, the defendant received consecutive 25-year prison terms for criminal sexual abuse and aggravated criminal sexual abuse where he "momentarily" grabbed the breasts of two young girls who were fully dressed and he made lewd comments and gestures. *Stacey*, 193 Ill. 2d at 210. The court reduced the defendant's aggregate sentence from 50 years to 12 years, based on the minimal contact. *Id.* at 211-12. Here, defendant's sentence is closer to the 12-year sentence than the 50-year sentence in *Stacey*. Moreover, it is not disproportionate to the nature of the offenses. Unlike in *Stacey*, defendant has a long history of deviant desires concerning children, which he acted upon in two separate incidents involving five children.

¶ 58　　The psychological reports and defendant's writings regarding his preoccupation with sexual activity with children presented defendant as a continuing, significant danger to the public and, specifically, a danger to children. In light of all of this, we cannot say that the trial court abused its discretion in sentencing defendant to an aggregate term of 20 years in prison.

¶ 59　　　　　　　　　　　　　　III. CONCLUSION

¶ 60　　For the preceding reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 61　　Affirmed.