2021 IL App (2d) 190708-U
No. 2-19-0708
Order filed November 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-509 |
| DONALD B. VISH, | ) ) | Honorable Donald Tegeler Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Hudson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant was not denied a fair trial or his right to due process when the trial court made an errant statement when summarizing the evidence presented as the record indicates the trial court considered the crux of defendant's case when making its finding of guilt. The trial court considered defendant's evidence in mitigation when handing down sentence within the statutory range.

¶ 2    After a bench trial, defendant, Donald B. Vish, was convicted of three felony counts of aggravated battery for (1) knowingly causing great bodily harm to the victim by punching her and causing facial fractures (720 ILCS 5/12-3.05(a)(1) (West 2016)); (2) knowingly causing bodily harm to the victim, in that he struck her about the body while upon a public way (720 ILCS 5/12-

3.05(c) (West 2016)); and (3) knowingly making physical contact of an insulting or provoking nature with the victim, in that he struck her about the body while upon a public way (720 ILCS 5/12-3.05(c) (West 2016)). The trial court found defendant eligible for an extended-term sentence and imposed a six-year sentence on one count of aggravated battery. On appeal, defendant contends that the trial court failed to correctly recall testimony in stating its findings in support of his guilt, and that the trial court did not consider all relevant factors in mitigation when imposing sentence. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4     Prior to defendant's bench trial, he filed a notice stating his intention to raise the affirmative defense of use of force in defense of person, pursuant to section 7-1 of the Criminal Code of 2012 (Criminal Code). 720 ILCS 5/7-1 (West 2016). Trial began on February 19, 2019.

¶ 5     At trial, the State's first witness, victim Kelly Johnston-Devor, testified that, on March 11, 2017, she was at the Beehive Bar and Grille (Beehive) in St. Charles with her family to watch the St. Patrick's Day parade. She arrived there around noon and stated that she had consumed two alcoholic beverages throughout the day. While at the Beehive, at approximately 5:00 p.m., she saw her cousin, Kevin Macey, walking through the bar and followed after him to talk as she had not seen him in about a year. While conversing with Macey outside of the patio section of the Beehive, she saw defendant approaching from the street in an aggressive manner. Although she had seen defendant inside the Beehive at the bar, she had no prior interaction with him.

¶ 6     Johnston-Devor testified that she had no recollection of what defendant said to her and Macey, nor what she may have said to him. She did recall that she pushed defendant away from her with two hands to his chest because she felt threatened due to her belief that "he had somehow touched my cousin." She recalled saying to defendant "Don't touch my fucking cousin." She had

no recollection of what happened after pushing defendant. Her next memory was "laying on the ground and yelling for Kevin," before "waking up in the hospital hours later." At the hospital, Johnston-Devor was treated for "broken face, dislodged teeth, swollen lips, a hematoma on [her] neck and side of [her] face." In addition to the pain associated with her injuries, Johnston-Devor stated that she required surgeries and suffers from memory loss since the incident. She denied jumping on defendant's back at any point during the confrontation.

¶ 7    The State next called Kevin Macey. Macey testified that he was at Alley 64 Bar in St. Charles at 5:00 p.m. on March 11, 2017, drinking with some friends. He said that he was arguing with a friend of defendant about Ford Mustangs when defendant asked Macey to go outside to fight. Macey told defendant "see you out there," but had no intention of going out to fight with defendant. Defendant went outside but came back in and stood with the group of bar patrons Macey was with. Macey was still talking to defendant's friend about Mustangs, but the argumentative nature of the conversation had ceased. It was at this time that defendant approached Macey and punched him in the jaw. Macey testified that he did not react to the punch. Defendant was removed from Alley 64 by security.

¶ 8    Macey testified that he left Alley 64 shortly after defendant punched him but maintained that he was not going out to find defendant. Rather, he was looking for his friend Jessie. He entered the Beehive looking for Jessie but could not find him. Macey then left the Beehive and returned to Alley 64 where he found Jessie who wanted to return to the Beehive. Upon exiting Alley 64 through the back entrance, Macey ran into Johnston-Devor. After exchanging pleasantries, Macey, Jessie, and Johnston-Devor returned to the Beehive through an alleyway leading to the back entrance where they encountered defendant outside the beer garden. Macey testified that "some words were exchanged" but could not recall specifically what was said.

¶ 9 Following the exchange of words, Macey testified that defendant and Johnston-Devor "did a little bit of some light wrestling I guess you would call it, and they were about 12 feet apart. My back was facing [defendant]. And we were getting ready to go into the beer garden, and next thing I know, [Johnston-Devor] turns around to face me because she's a couple steps ahead of me, and [defendant] lunges at her and just lays her out." Macey clarified that "lays her out" meant "punched her in the jaw, broke her jaw, busted all her teeth out of her mouth." Johnston-Devor fell facedown to the ground. Macey said that he separated defendant and his cousin when they were wrestling, but when they tried to walk away, defendant charged them and hit Johnston-Devor with a closed fist after a running start.

¶ 10 On cross-examination, Macey stated that he had "a total of maybe five beers," throughout the evening but admitted his argument with his friend about Mustangs became confrontational when defendant asked him to go outside. After the incident involving defendant and Johnston-Devor, Macey was asked by police to come back to the station. He declined and told them he was too intoxicated. He had no recollection of where Jessie was when the incident occurred, only that "just kind of lost track of him."

¶ 11 The State next called Officer Steven Woloszyk of the St. Charles Police Department. He testified that he was called to Salerno's Restaurant at approximately 5:00 p.m. on March 11. 2017, to respond to a report of an intoxicated person. Salerno's restaurant is located within walking distance of both Alley 64 and The Beehive. Upon his arrival at Salerno's, there were three other St. Charles police officers already present. The other officers were standing around defendant, attempting to get him to into an ambulance for treatment to a laceration on his hand. Woloszyk described defendant as uncooperative to the other officers' requests. Eventually, Woloszyk and several other officers "had to escort [defendant] to the ambulance, and at some point he ended up

sitting on the ground. So, they ended up bringing the gurney to us, and we had to pick him up and put him on the gurney." Woloszyk described defendant as "highly intoxicated" and affirmed that he had an odor of alcohol.

¶ 12    Woloszyk was dispatched to Delnor Hospital where he spoke with Johnston-Devor. He observed that "[t]he left side of her face was pretty swollen. She had a cut on her nose. She was spitting blood out of her mouth." He did not observe any injuries to Johnston-Devor's hands. When interviewing her, Woloszyk observed that "[s]he was having a hard time speaking. She kept having to stop, saying her mouth was hurting really bad, and she kept having to spit blood out of her mouth." He described Johnston-Devor as cooperative during their interaction.

¶ 13    Johnston-Devor told Woloszyk how she sustained her injuries and gave a description of the person who hit her. Shortly after this conversation, Woloszyk learned that defendant, who matched the given description, arrived at Delnor Hospital. He attempted to speak with defendant, who was very confrontational. Woloszyk went back to speak with Johnston-Devor to get more information before returning to defendant, who again refused to speak with him. Defendant was "very uncooperative, yelling, swearing at us, telling us he was never in a fight but refused to say anything else or talk to us about the incident." Defendant refused to reveal how he had sustained the injury to his right hand. Woloszyk did not notice any other injuries to defendant. Defendant was placed under arrest at the hospital and escorted outside to a police squad car. On the way to the squad car, defendant stated "I hit that bitch pretty hard."

¶ 14    Before the State rested its case, the parties stipulated to the admission of People's Exhibit 14. The stipulation provided that if called to testify, Dr. Kalsi, one of Johnston-Devor's treating physicians at Delnor Hospital on the night of the incident, would state that she suffered a fracture

to her nasal bone, a concussion, the dislocation of her upper left incisor, and a fracture to the bone connecting her tooth sockets to the jawbone.

¶ 15    Defendant called Officer Woloszyk first to testify. Woloszyk stated that he went to Macey's home about a week after the March 11, 2017, incident to interview him. Macey told him that he went to The Beehive to look for defendant following the argument inside Alley 64. Macey found defendant at The Beehive but decided he did not want to confront him. He then left The Beehive when he met Johnston-Devor before being approached by defendant upon attempting to reenter The Beehvie. An argument ensued and Johnston-Devor tried to get between Macey and defendant. Defendant and Johnston-Devor started wrestling before Macey separated them.

¶ 16    Next, defendant testified as the defense's final witness. He testified that, on March 11, 2017, he was at the St. Patrick's Day Parade in St. Charles with his friend Duane. The pair watched the parade from The Filling Station before walking to Alley 64 where they found a table with six to eight other people in the crowded establishment. Macey approached the table and began speaking to Duane. At some point, defendant pushed Macey because "he got into my personal space a couple times." Defendant denied asking Macey to "take this outside" or leave at any time to wait for him." He maintained that the Alley 64 bouncers told him to leave after pushing Macey for invading his space. Defendant testified that he gathered his belongings and exited Alley 64 through the back door and went directly to The Beehive.

¶ 17    While making his way to The Beehive, defendant heard a voice say "[h]ey, motherfucker. What's up now?" Defendant related that he turned around and saw Macey who proceeded to get "right in my face." Defendant testified that he then said "[w]ell, what's up? What do you want to do?" Macey, according to defendant, then punched him in the head. Defendant tried to grab Macey but someone jumped on his back, put their arm around his throat, and wrestled with him upon

going to the ground before being separated. Defendant testified that the person who jumped on him then "comes at me, pushes me" before telling him to leave.

¶ 18    Defendant was shown State's Exhibit 12, his mugshot from the night of March 11, 2017, and indicated on the photo that Macey hit him on the top of the head, but Macey "didn't catch me flush in the face or anything."

¶ 19    Defendant testified that he thought the person who jumped on his back must have been one Macey's friends. He stated that when that person came back at him, he thought that person was going to attack him. He punched that person once in the face. The person fell to the ground. Defendant believed the person he hit to be male based on the clothes the person was wearing. He then left the area and walked to Salerno's, where he had once worked in the kitchen. Upon arriving, defendant went into the Salerno's bathroom and bandaged his hand. He then went to the bar in the restaurant to phone his mother.

¶ 20    Defendant testified that he refused to cooperate with St. Charles police regarding leaving with an ambulance because he did not have medical insurance and did not want the hospital bill. After going to Delnor Hospital, defendant was treated for a laceration to his hand. He also learned while there that the person he struck was female, which "was surprising" to defendant. He denied using the word "bitch" to St. Charles police after his arrest. He said he probably responded "[m]an, I hit her hard" in response to what he believed the police might have said. He said the police may have said "[y]ou must have hit her pretty hard" or "[s]he's messed up." Defendant testified that he probably would have responded to these potential questions with "[y]eah, I hit her hard."

¶ 21    Defendant spent the next two days at the Kane County Jail before posting bond. After leaving the jail on March 13, 2017, he went to the St. Charles Police Department to get a copy of the police report. While inside, he saw Johnston-Devor enter the department with two other

women. Defendant stated that Johnston-Devor said "speaking of the motherfucking devil right there." Defendant described Johnston-Devor's as "jumping around like she was coming at me, trying to make a pass at me." Defendant said the other two women were trying to hold Johnston-Devor back. A video of the incident was played and admitted as Defense Exhibit 6.

¶ 22    On cross-examination, defendant admitted to having consumed "a significant amount" of alcohol at Alley 64. He further admitted that he was the first to make physical contact with Macey when he pushed him inside Alley 64. As to the fight outside, defendant said Macey approached him from behind and struck him in the forehead. He then grabbed Macey by the shirt when Johnston-Devor jumped on his back. Defendant testified that at that time "I'm grabbing Kevin Macey. She's on my back, and she's got her arm around my throat – or this person." He testified that he then rolled over to get Johnston-Devor off his back. After separating from her, they both got up off the ground when Johnston-Devor pushed him, swore at him, and pushed him again before defendant struck her in the face.

¶ 23    Defendant acknowledged on cross-examination that he did not call police following the incident. He admitted to his refusal to be transported to either the police department or Delnor Hospital. He admitted that he was aggressive to police officers at Salerno's restaurant and denied that he was in an altercation when questioned there. He did not report that Kevin Macey had punched him. He "didn't go into detail," but did tell police he was attacked by two people. Finally, he admitted that Johnston-Devor was at least 20 to 30 feet away from him when at the St. Charles Police Department on March 13, 2017.

¶ 24    The State called Officer Woloszyk as a rebuttal witness. He testified that he did not notice a bump or redness on defendant's forehead on the night of the incident.

¶ 25    Johnston-Devor was recalled as a rebuttal witness and testified that she did encounter defendant at the St. Charles Police Department on March 13, 2017, but had no intention to fight with him.

¶ 26    Following closing arguments, the trial court articulated its findings. The trial court found that defendant properly raised the affirmative defense of self-defense but would not be justified in using force if he initially provoked the use of force himself. The trial court found "[defendant] openly admits that he hit [Johnston-Devor] in the face. Did he do it in self-defense? Well, there's no question in this Court's mind that the incident between [Macey] and [defendant], the first incident, that [defendant] is obviously the initial aggressor." The trial court stated "I find it important that [defendant] has a problem with his personal space. There is a way to take care of that. It's call[ed] turn around and walk away." The trial court found the incidents happened on a public way and caused great bodily harm. Finally, the trial court took issue with defendant's credibility in his testimony regarding his version of the incident. To wit:

> "[Defendant] in his testimony admits that he hit [Johnston-Devor] but says that she was on his back, grabbing his throat. Quite frankly, I find it hard to believe that that type of punch could do that type of damage with somebody on your back, grabbing your throat. That's a punch that occurs face to face. He says that she was coming at him, but quite frankly, I just don't believe it."

The trial court found defendant guilty on all three counts and merged the public way counts into the count of knowingly causing great bodily harm to the victim by punching her and causing facial fractures (720 ILCS 5/12-3.05(a)(1) (West 2016)).

¶ 27    On March 19, 2019, defendant filed a motion to reconsider the trial court's finding of guilt arguing that the trial court "erred in its finding of guilt." At the April 17, 2019, hearing on

defendant's motion, he argued that the trial court made a mistake in recalling defendant's testimony as no testimony was introduced that "defendant hit [Johnston-Devor] while she was on his back, with her arms around his neck." Defendant further argued that his single punch was "reasonable under the circumstances" to "diffuse his belief that he was going to get hit again or pushed." The trial court denied defendant's motion to reconsider its finding of guilt and proceeded to sentencing that same day.

¶ 28 Brooks Boyce of the St. Charles Police Department was first called to testify at defendant's sentencing hearing. Boyce testified that he investigated a complaint involving a woman in St. Charles who alleged defendant spiked her drink with methamphetamine in October 2011. Boyce relayed that no charges were filed against defendant after investigation. Before cross-examination of Officer Boyce could take place, a continuance was issued. Defendant's counsel had a conflict necessitating a new counsel to question Boyce. Sentencing was continued until May 7, 2019.

¶ 29 Defendant failed to appear for the May 7, 2019, sentencing hearing. Subsequently, he failed to appear for continued sentencing hearings on May 30, 2019, and June 6, 2019. The trial court continued with defendant's sentencing on June 27, 2019, *in absentia*.

¶ 30 Officer Robert Kenders of the Geneva Police Department testified that on September 20, 2006, he was dispatched to a pub in Geneva to respond to a fight in progress involving defendant. Upon arrival, Kenders found defendant had fled and a male victim was laying in the street with a pool of blood around his head. Kenders was told by witnesses that defendant and one of his friends started an argument with another patron in the pub. When the male victim tried to break up the argument, defendant and his friend kicked him in the head. The victim required stitches in his head and suffered swelling. Kenders admitted on cross-examination that the bouncer at the pub could

not say who had started the argument. The incident was included in defendant's criminal history as Kane County case No. 06 CF 2431.

¶ 31    Officer Lance Pahle of the Geneva Police Department testified that he was dispatched to the Flagstone Pub and Little Owl Restaurant in Geneva at 1:00 a.m. on February 12, 2010. He found defendant sitting outside, bleeding profusely. Defendant could not tell police what had happened, but acted hostile and belligerent to medical personnel upon being transported to the hospital. Defendant used profanities to Pahle and threatened to go to his house and kill his children. Defendant was subsequently convicted of a felony count of threatening a public official.

¶ 32    Valerie Whittle testified that she worked for SCRAM Systems of Illinois on February 22, 2019, when she fitted defendant with a court-ordered monitoring bracelet. An unknown female came to the SCRAM office and dropped off the bracelet after it had been improperly cut and removed from defendant as no court order had been entered to allow its removal.

¶ 33    Johnston-Devor read her victim impact statement into the record. She recounted her injuries as a result of the incident with defendant. She suffered a broken face, broken nose, and a concussion. She needed more that 45 medical appointments in the three-month period following the incident and has been in "various stages of recovering from that same concussion and dealing with daily pain" since defendant struck her. She described the effects of post-concussive syndrome and traumatic brain injury. She suffered from loss of coordination, confusion, difficulty sleeping, fatigue, anxiety and depression. She could no longer participate in athletic events she had once enjoyed. Johnston-Devor stated that she had lost her sense of smell and cannot smile or bite down on food without pain. She still had $4,191.00 in outstanding medical bills at the time of her testimony, as well as thousands of dollars in additional expenses related to defendant's conduct. She asked the trial court to impose the maximum sentence allowed by law on defendant

¶ 34    Regarding factors in aggravation, the State alluded to defendant's lengthy criminal history contained in the record, including multiple felony convictions and a history of violent, alcohol-fueled altercations in public places. The State noted that defendant was on probation for an offense in Du Page County at the time he committed the crime at issue. The State argued that defendant's imprisonment was necessary to protect the public.

¶ 35    Defendant's counsel argued statutory mitigating factors, including defendant's failure to contemplate that his conduct, made under strong provocation, would cause such serious physical damage to Johnston-Devor by throwing a single punch. Counsel asserted that defendant was acting in self-defense, would compensate Johnston-Devor for medical bills, and was the primary financial support for his two children and their mother. Counsel requested the trial court to impose probation and alcohol treatment on defendant.

¶ 36    The trial court sentenced defendant *in absentia* to a term of six years in prison, followed by one year of mandatory supervised release. As to mitigating factors, the trial court stated

> "First, I'm going to go through what I consider the Factors in Aggravation and Mitigation, those are found at 730 ILCS 5/5-5-3.1 and 3.2. I find *** that [mitigating factor] Number 3 is somewhat applicable, that he acted under strong provocation. There's no question in this case that the victim in this case had anything to do with starting this altercation. The other gentlemen did, and of course, [defendant] did. I say that because I also understand that alcohol was involved and although alcohol is not the strong provocation we have here, I believe [defendant] was somewhat provoked. I found, and still believe, that he was not legally justified in his actions in any way, shape, or form, but there was some provocation, so I will give him some credit on Number 3."

The trial court went on to say, in reviewing mitigating factor number 4:

"Number 4, \*\*\* that there is substantial ground tending to excuse or justify the defendant's criminal conduct while failing to establish a defense \*\*\*; I take issue with the word "substantial" there and I'll give him some credit on that. I don't think that there's substantial grounds, I think that there [are] some grounds tending to excuse his actions and there's no way that his actions – well, I'll say his actions definitely failed to establish a valid defense as this Court found. I do not find there are any other mitigating factors."

¶ 37 Regarding factors in aggravation, the trial court noted defendant's lengthy history of criminal activity contained in the presentence investigation, making him eligible for extended-term sentencing. The trial court further stated that defendant was on probation when he committed the offense and imprisonment "is necessary to deter others from committing the same crime." Finally, the trial court stated

"There's no question that alcohol has ruined [defendant's] life and if he does not change, he's going to have two children probably unfortunately grow up without a father. Alcohol has absolutely ruined him. You can see alcohol in every crime he has ever committed including this one, and that's not an excuse. It does help explain why somebody would behave the way they do, but does not in any way, shape, or form excuse them; and it's unfortunate because it appears that he has a very, very good-paying job, it appears when he's sober, he is a productive member of society but since the time he was 17 he's ceased to even attempt, although I see he's gone to rehab, I can't say that he's seriously attempted to become sober. I can say that he has gone through rehab and as attested to the Drug Court, he did things to stay out of trouble, but he has not taken the steps to remain sober and become a complete productive member of society."

Following sentencing *in absentia*, defendant's counsel filed a motion to reconsider sentence. In August 2019, defendant was arrested in Michigan on outstanding warrants. He was returned to Illinois and present for a hearing on the motion to reconsider, which was denied by the trial court.

¶ 38    Defendant filed this timely appeal.

¶ 39                                    II. ANALYSIS

¶ 40    Defendant raises to two contentions in this appeal. First, he contends that he was denied a fair trial due to the trial court's mistaken recall of defendant's testimony. Second, defendant contends that his sentence is excessive because the trial court failed to properly consider statutory factors in mitigation. We address defendant's contentions in turn.

¶ 41    When reviewing a claim of insufficient evidence in a bench trial, we presume that the trial court accurately recalled and considered all the evidence. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 102. We will not reverse the trial court's determination unless no rational trier of fact could have reached the same conclusion. *Williams*, 2013 IL App (1st) 111116, ¶ 102. However, in a claim that the trial court mistakenly recalled evidence, a deferential standard of review is insufficient when the record contains affirmative evidence that the trial court made a mistake in its decision-making process. *Williams*, 2013 IL App (1st) 111116, ¶ 103; *People v. Simon*, 2011 IL App (1st) 091197, ¶ 91. Therefore, a claim of mistaken recall is reviewed *de novo* to examine the question of whether the record evinces that the trial court made an affirmative mistake in arriving at its decision. *People v. Schuit*, 2016 IL App (1st) 150312, ¶ 105; *Williams*, 2013 IL App (1st) 111116, ¶ 104.

¶ 42    A defendant is deprived of a fair trial where the record affirmatively indicates that the trial court did not consider or recall the crux of the defendant's case when entering judgment. *Simon*,

2011 IL App (1st) 091197, ¶ 91. A "minor misstatement" of evidence that does not affect the basis of the trial court's ruling does not constitute a violation of due process. *Schuit*, 2016 IL App (1st) 150312, ¶ 107.

¶ 43    Defendant takes specific issue with the trial court's statement that

> "[Defendant] in his testimony admits that he hit [Johnston-Devor] but says that she was on his back, grabbing his throat. Quite frankly, I find it hard to believe that that type of punch could do that type of damage with somebody on your back grabbing your throat."

Defendant argues that no evidence was introduced that Johnston-Devor was punched while on defendant's back. As such, defendant claims, the trial court's mistaken recollection calls the presumption of its accurate consideration of all the evidence into question as self-defense represented the crux of defendant's case and necessitates a *de novo* review. We disagree.

¶ 44    Defendant testified that when he was involved in the altercation with Macey, "someone jumped on my back right away." However, that testimony was the only evidence introduced supporting that notion. During her testimony, Johnston-Devor was asked "[a]t any point on that day did you jump on the defendant's back?" She responded that she did not. Macey's testimony recounting the incident never described Johnston-Devor as having jumped on defendant's back. He was asked by the State if remembered ever seeing Johnston-Devor jump on defendant's back. Macey did not recall that ever happening. In the State's closing argument, it remarked "[a]t no point did anyone jump on the defendant's back or attack the defendant. [Johnston-Devor] nor [Macey] told this Court that it was [Johnston-Devor] who attacked the defendant by jumping on his back, that is was the defendant running up on them."

¶ 45    Defendant's argument that the trial court made a mistake in its recollection of the testimony is misguided. The trial court acknowledged defendant's statement that he punched Johnston-Devor

when she was not on his back. Further, the trial court even acknowledged that Johnston-Devor initiated contact with defendant when she pushed him, but found he could have walked away. The trial court's remark that defendant takes issue with in this appeal does not illustrate a mistaken recollection, but rather, a rejection of defendant's claim that Johnston-Devor jumped on his back at all. The findings, taken as a whole, establish that the trial court understood the crux of defendant's self-defense claim, but found that it was not supported by the evidence presented by the defendant. Based on our review of the totality of the record, we find that the trial court accurately recalled and considered the evidence.

¶ 46    Before concluding our affirmance of the trial court's findings on this issue, we note that defendant argues that the March 13, 2017, surveillance video taken from the St. Charles police station supports his claim that Johnston-Devor was the aggressor on the night of the incident. After reviewing that video, this court finds no support for defendant's claim. The video contains no audio and shows no interaction between the two women (one purported to be Johnston-Devor) who enter the police station while defendant stands at a service window. Therefore, based on the foregoing, the trial court's recall of the evidence presented was not mistaken and is entitled to a deferential standard of review. A rational trier of fact could have reached the same conclusions as the trial court, leading this court to leave the trial court's determination undisturbed.

¶ 47    We now turn to defendant's contention that the trial court failed to properly consider mitigating factors when imposing an extended term sentence. Defendant specifically cites the trial court's failure to consider that imprisonment would entail excessive hardship on his dependents and his willingness to compensate Johnston-Devor as support for this contention.

¶ 48    The trial court has broad discretion in imposing a sentence, and its sentencing decisions are entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Reviewing courts

must give great deference to the trial court's sentencing judgment because the trial judge observed the defendant and the proceedings and had a better opportunity to consider the factors in imposing sentence than the reviewing court. *Alexander*, 239 Ill. 2d at 212-213. The reviewing court will not substitute its judgment for the trial court because it may have weighed the factors differently. *Id*. at 213. A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court. *Id*. at 212. An abuse of discretion occurs when the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 49    Defendant was convicted of a Class 3 felony, eligible for an extended-term sentence based on his prior felony convictions. "The sentence for an extended term Class 3 felony *** shall be a term not less than 5 years and not more than 10 years." 730 ILCS 5/5-4.5-40(a) (West 2018). The trial court imposed a six-year term of imprisonment, well within the statutory range. A sentence within the applicable statutory range is presumed to be proper and not excessive. *People v. Ressa*, 2019 IL App (2d) 170439, ¶ 52. This court will not disturb a sentence absent clear evidence of its impropriety. *Ressa*, 2019 IL App (2d) 170439, ¶ 53. The record here shows no such impropriety.

¶ 50    The trial court specifically cited two factors in mitigation of defendant's sentence. It found the existence of provocation and grounds tending to excuse defendant's conduct while failing to establish a defense. See 730 ILCS 5/5-5-3.1(a)(3), (4). The mere fact that the trial court did not find defendant's claims of hardship to his dependents if incarcerated or his willingness to pay restitution as factors mitigating sentence does not mean that it failed to consider the evidence presented on those claims. See *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 45. The record reflects the trial court considered defendant's mitigation evidence and did not give more weight to those factors than to the nature of defendant's offense. See *Ressa*, 2019 IL App (2d) 170439, ¶ 52.

¶ 51    The trial court noted defendant's alcohol abuse is the source of his violent past and criminal record, stating that "alcohol has ruined [defendant's] life and if he does not change, he's going to have two children probably unfortunately grow up without a father." However, the trial court found imprisonment of defendant "necessary for the protection of the public" and probation or conditional discharge "would be completely inconsistent with the ends of justice." Additionally, defendant was ordered to pay restitution in the amount of $7,291 to Johnston-Devor in relation to fines and costs.

¶ 52    Defendant's contention's that the trial court failed to properly consider the mitigating factors is belied by the record. The six-year term of imprisonment is not an excessive sentence as it falls on the low-end of the applicable statutory range for an eligible extended-term for a Class 3 felony conviction. See 730 ILCS 5/5-4.5-40(a) (West 2018). The trial court's sentencing determination was not an abuse of discretion.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 55    Affirmed.